[Civ. No. 15397.   Second Dist., Div. Three.   May 29, 1947.]

W. FRANK SHELLEY, Appellant, v. ELIZABETH
IRVING BIXBY et al., Respondents.

Arthur E. Briggs and Charles E. McGinnis for Appellant.

William P. Boland for Respondents.

WOOD, J.—Plaintiff W. Frank Shelley, an attorney at law, appeals from a judgment in favor of the defendants. Under one cause of action he sought to recover fees allegedly due under a written contract whereby defendants employed him and two other attorneys to render legal services. Under another cause of action he sought to recover the reasonable value of legal services allegedly rendered.

On December 21, 1936, the defendants Elizabeth Irving Bixby and Lillian Odisho Bajon, as parties of the first part, and W. Frank Shelley, George D. Higgins and Franklin P. Bull, attorneys at law, as parties of the second part, entered into a written contract, prepared by said attorneys, whereby the first parties employed said attorneys "to represent them" and "attend to their legal matters pertaining to their interest" in the estate of Fanny Bixby Spencer, deceased. The contract also provided that for said services so rendered by said attorneys the first parties would pay to said attorneys one-fourth of any moneys secured by the first parties from the estate. The recitals in the contract, under the "Whereas" clauses (except the second one which is unintelligible), were to the effect that the first parties were beneficiaries under the will of said deceased; that they were dissatisfied with a decree of the court, and desired to have the matter of their rights as beneficiaries under the will "and the trust established thereunder further litigated and determined"; that the second parties were attorneys at law; that the first parties were desirous of employing said attorneys to represent them in all matters "touching their interest" in said estate as the same may appear under the will, or under the trust established by the will, or under "the attempted trust established by the decree of the Court"; and that the attorneys were willing to accept the employment and give it their best endeavors. (The contract, except for the signatures, is shown in the footnote.*)

Mr. Higgins was a plaintiff herein, but before the trial he settled his claim for $250 and dismissed the action with preju-

---

*"AGREEMENT

"This agreement, made and entered into at the city of Los Angeles, County of Los Angeles, State of California, on the 21st day of December, 1936, by and between ELIZABETH IRVING BIXBY and LILLIAN ODISHO BAJON, of the County of Los Angeles, State of California, parties of the first part, and W. FRANK SHELLEY, GEORGE D. HIGGINS and FRANKLIN P. BULL, of the same place, parties of the second part.

WITNESSETH

"THAT, WHEREAS, the parties of the first part and each of them are beneficiaries under the last will and testament of Fanny Bixby Spencer,

dice as to himself. Mr. Bull was offered a promissory note for $250 in payment for services rendered by him, but he refused to accept it and wrote upon the face thereof as follows: ''I hereby refuse to accept this note, you are under no obligation, as you received no services which resulted in any benefit to you. I thank you. Franklin P. Bull.'' Upon stipulation at the beginning of the trial, the trustee in the reopened bankruptcy estate of W. Frank Shelley (which had been reopened

deceased, by the terms of which will two trust_ were created in favor of minors, not exceeding $55,000.00 for both, the residue to seven legatees in equal shares, except one life estate.

''AND WHEREAS said executors, their attorneys and The Security-First National Bank of Los Angeles, a corporation, in its various capacities, especially as Trustee under the said will and under the decree of the Court, setting aside the trust provided for in the will and the provisions for the residuary legatees, and making a new trust and putting all the property bequeathed to the residuary legatees into said new trust:

''AND WHEREAS said parties of the first part are dissatisfied with said decree, and are desirous of having the matter of their interest and rights as beneficiaries under the will of the deceased and the trust as established thereunder further litigated and determined according to the law as laid down by statutes of the State and the Constitution of the United States;

''AND WHEREAS said W. Frank Shelley, George D. Higgins and Franklin P. Bull, the parties of the second part, are and each of them is and attorneys-at-law, duly authorized to practice law in all the Court_ of the State of California (both Federal and State);

''AND WHEREAS said parties of the first part are desirous of employing said parties of the second part to represent them in all matters touching their interest in said Estate of Fanny Bixby Spencer, deceased, as the same may appear under the will of the deceased or the trust established by said will or the attempted trust established by the decree of the Court;

''AND WHEREAS said parties of the second part are willing to accept said employment and agree to devote the necessary time and give to the said employment their very best endeavors;

''Now THIS AGREEMENT WITNESSETH: That the parties of the first part do hereby employ the parties of the second part to represent them and each of them and attend to their legal matters pertaining to their interest in said estate.

''IT IS THEREFORE MUTUALLY AGREED that for said services so rendered by the parties of the seond part, said parties of the first part will pay to said parties of the second part one-fourth of any and all moneys secured by them or either of them from said Estate. It is agreed that whatever moneys are received by the parties of the first part from said estate, one-fourth thereof shall be the property of the parties of the second part.

''The parties of the first part further agree to pay the costs and expenses incurred in any and all litigation connected with said matter, and that they will reimburse from said Estate the parties of the second part for any payment by them of necessary expenses in and about said litigation or matter pertaining to said estate.

''IN WITNESS WHEREOF the said parties have hereunto set their hands this 22nd day of December, 1936.''

at the bankrupt's request) was added as a party plaintiff. The trustee has not appealed. The amount sought as attorneys' fees was $123,333.33⅓, being two-thirds of one-fourth of the alleged total value of defendants' interests in the trusts.

For approximately three years before the contract was made the defendants had been engaged in litigation wherein they were attempting to set aside two certain trusts affecting their interests under the will of Fanny Bixby Spencer, deceased. Under one of the trusts, made December 22, 1930 (referred to as the "private trust"), the defendants and the other residuary legatees in the Spencer estate assigned to the Security-First National Bank their interests in all property they might receive under said will, and the bank delivered to them its declaration of trust in exchange therefor. The other trust (referred to as the "court trust") was imposed upon the residual assets of the Spencer estate, which included the interests of defendants, by the decree of distribution in said estate on February 3, 1933, and the same bank was the trustee.

Prior to making the contract the defendants herein had commenced an action against the bank, as trustee of both trusts, to terminate the trusts. The judgment of the trial court therein denied relief to plaintiffs therein (defendants herein), and upon appeal therefrom the judgment was affirmed by the Supreme Court of this state on September 18, 1936. (*Bixby* v. *Security-First Nat. Bank,* 7 Cal.2d 424 [60 P.2d 862].)

The court herein found that said attorneys had independent offices and were not associated together as a firm, but undertook the employment as a special partnership or joint venture; that prior to making the contract the defendants explained to plaintiff Shelley and the other two attorneys the proceedings which had theretofore been taken by them in the litigation to free their interests from the trusts, and particularly the decision of the Supreme Court affirming the adverse judgment of the trial court; that said plaintiff represented to defendants that there were grounds to seek a review in the Supreme Court of the United States of the decision of the Supreme Court of this state, and also that defendants could obtain relief from the decree of distribution "by bringing" an action in the federal court asking relief upon the ground that the decree of distribution was unconscionable and upon other grounds; that defendants entered into the contract in reliance upon the representations of plaintiff Shelley

and the other attorneys; that it was the intent of the parties to said contract that the compensation to be paid to the second parties was to be payable only from money which said attorneys would free from the terms of the trusts; that it is not true that it was the intention of the parties that the percentage to be paid to the second parties was intended as or operated as an immediate assignment of such interest as compensation for services of the attorneys, but that said contract was a contingency contract and the stipulated percentage therein was to become due to the attorneys only when and if the litigation to free assets of the first parties from the trusts was successful and then only to the extent that it was successful; that after the making of the contract said attorneys appeared in behalf of the defendants in litigation in the Superior Court of Orange County, in the District Court of Appeal, and in the District Court of the United States, but in each instance of such appearances a judgment or order adverse to defendants was entered and they were denied relief in all such actions, motions or proceedings; that said attorneys failed to prosecute with proper professional skill or ability the various proceedings had and taken on behalf of defendants; that an appeal to the District Court of Appeal was dismissed, on respondent's motion therein, for failure of said attorneys to state any ground of appeal in appellants' opening brief; that no grounds appear for a review of the decision of the State Supreme Court by the United States Supreme Court; that plaintiff Shelley, long after the time had expired in which such review by the United States Supreme Court could have been secured if there had been any legal grounds for such review, continued to represent to defendants that he was working on an appeal to the United States Supreme Court, and procured their signatures to documents in preparation of a record on such appeal; that said attorneys commenced an action in the federal district court in an attempt to review the matters decided by the Supreme Court of this state, and the federal court gave judgment for the defendants therein upon a demurrer and a motion to strike; that all objections made by the attorneys to an account of the trustee in the estate of Fanny Bixby Spencer, deceased, in the Superior Court of Orange County were overruled; that before said objections were heard, said attorneys charged the trial judge with prejudice, and upon a hearing the charges were "overruled"; that "the services rendered by said attorneys, and each of them, were without value to the defendants, and failed to secure for them, relief

in any form or any matter or thing of value for or to said defendants, or either of them, and failed to release from the terms of said Trusts, or either of them, any money or property whatsoever.''

The court also found that about July 30, 1937, the defendants wrote to said attorneys expressing dissatisfaction with their representation of defendants and expressing a desire to terminate the contract; that as a result of negotiations thereafter attorneys Higgins and Bull on behalf of, and as members of, said special partnership agreed to cancel said contract and to accept a note of defendants for $250 in full payment for all services theretofore rendered under the contract; that a formal cancellation of the contract was signed by Higgins and Bull on January 13, 1938, and they withdrew as attorneys for defendants, and the note in favor of Mr. Higgins was delivered to him, but Mr. Bull refused to accept the note tendered to him by defendants and he wrote across the face thereof the words hereinbefore quoted (to the effect that the defendants were under no obligation because the services resulted in no benefit to them); that plaintiff Shelley was tendered a note upon the same terms as the notes which were tendered to the other attorneys, but he refused to accept it; that on February 11, 1938, on motion of defendants, he was removed as attorney for defendants; that good cause appears for writing said letter of July 30, 1937, and reasonable grounds appear for the request to terminate the contract, and defendants were fully justified in securing the cancellation of the contract.

The court also found that neither of the trusts was set aside or modified in any manner prior to the termination of said contract by reason of any proceedings in court commenced by said attorneys, and that neither of said defendants received any money or property from either of said trusts, prior to the termination of the contract, by reason of any action of any kind commenced or carried on by said attorneys or in any manner whatsoever.

The court found further that plaintiff Shelley, on his voluntary petition, was adjudicated a bankrupt on September 14, 1937, and was discharged in bankruptcy on July 5, 1938.

It was stipulated that the defendants first received money from the trusts about March 31, 1939, and that the amount then received by each was $304.80. Thereafter each defendant received various payments in cash aggregating $1,254, and also

503⅓ shares of the Jotham Bixby Company and 6⁵⁷⁄₆₆ shares of the Alamitos Land Company. The record does not show the value of the shares.

The court trust provided that certain monthly payments were to be made to certain beneficiaries, and an annual payment to one of them, until a certain amount had been paid or until a sum of money had accumulated in the hands of the trustee equal to 125 per cent of all future payments that might become due to those certain beneficiaries under the trust. The trustee of the court trust continued to make those payments from the time the trust was created in 1933 until March, 1939, at which time it had accumulated sufficient cash on hand to create the 125 per cent fund, which fund amounted to $20,225. Upon the hearing of the trustee's fifth account, rendered in March, 1939, the court ordered that the balance of the assets in the court trust, after retaining the 125 per cent fund, be distributed to the private trust.

The private trust, which was made by all the seven residuary legatees in the Spencer estate, provided that it might be modified by the agreement of the parties. After plaintiff Shelley had been removed as attorney for these defendants, the parties to the private trust agreed to and did modify it so that it provided that the trustee might resign and new trustees be appointed and that distribution might be made from time to time. On March 31, 1939, about 14 months after Mr. Shelley had been removed as attorney for defendants, the bank resigned as trustee of the private trust and five of the beneficiaries, including these defendants, were appointed trustees. The new trustees then distributed to each of the beneficiaries the sum of $304.80, above mentioned. Later they distributed to each of the beneficiaries 503⅓ shares of the Jotham Bixby Company and 6⁵⁷⁄₆₆ shares of the Alamitos Land Company. [From the 125 per cent fund retained in the court trust each beneficiary received at later dates additional sums which aggregated the $1,254 above mentioned.]

Appellant contends that the court erred in finding that his right to compensation was contingent upon the results of the litigation and services of the attorneys. He argues that the court should have found that the contract operated as an immediate assignment to the attorneys, at the time the contract was made, of one-fourth of the interests of the defendants in the trusts as compensation for such services as might thereafter be rendered by them. His argument is based upon the provision in the contract that, ''It is agreed that whatever

moneys are received by the parties of the first part from said estate one-fourth thereof shall be the property of the parties of the second part.'' The sentence preceding that one is to the effect that for the services so rendered by the second parties (the attorneys) the first parties would pay to the attorneys ''one-fourth of any and all moneys secured by them or either of them from said Estate.'' These two sentences when considered together indicate that it was the intention of the parties that the attorneys' compensation was dependent upon whether any money was secured from the trusts by reason of the services of the attorneys. The contract does not state specifically what services were to be rendered by the attorneys, but it recites generally that the first parties (defendants here) were desirous of having their rights under the will and the trust ''further litigated and determined.'' The only statement therein indicating an attempt to be specific as to what was to be done by the attorneys was the fatuitous recital that the defendants desired that their rights be litigated ''according to the law as laid down by statutes of the State and the Constitution of the United States.'' The contract was indefinite and ambiguous. The circumstances prevailing at the time the contract was made do not furnish any reasonable basis for appellant's contention that the contract was an immediate assignment to the attorneys of one-fourth of defendants' interests in the trusts, regardless of the kind, amount or results of their services. At the time the contract was made the defendants had had litigation for three years endeavoring to obtain relief from the provisions of the trust, and they had been unsuccessful in all respects in the litigation,—the Supreme Court of the state had decided the issue adversely to them and the decision had become final, and it was obvious that no federal question was involved. It would have been most unreasonable for the defendants to assign one-fourth, or any substantial portion, of their extensive interests in the trusts for the mere purpose of engaging in further litigation when the prospect of success was so extremely poor, and regardless of the results of the litigation and the time it might continue. Under appellant's contention, that it was an immediate assignment, he would be entitled to a fourth of defendants' interests if after some litigation, however meager and unsuccessful, the defendants should eventually receive money from the trusts solely by reason of the provisions of the trusts. Appellant alleged in his complaint that at the time the contract was made the defendants were

unable to pay any attorney fees and "That it was, therefore, necessary to employ attorneys upon a *contingent basis.*" (Italics added.) The statement written by Mr. Bull on the note which was tendered to him, to the effect that there was no obligation since the services were of no benefit, shows that he did not consider the contract to be an immediate assignment, but on the contrary that he considered that compensation under it was contingent upon benefits obtained. When the whole contract and the circumstances surrounding the making of it are considered it must be concluded that the contract was not an outright and immediate assignment or any assignment of one-fourth of defendants' interests in the trusts. The trial court did not err in determining that it was a contingency contract and that the compensation to be paid to the attorneys was to be payable only from money which the attorneys would free from the terms of the trust.

At the trial there was uncertainty on the part of appellant as to the theory upon which he sought to recover. The first cause of action in the complaint appears to be based on the theory that the contract was for a contingent fee and that he was entitled to damages, in the amount of one-fourth of defendants' interests, because he had been wrongfully discharged and was thereby prevented from performing the services, which he could have performed. His counsel (not present counsel) contended that it was not a contingency contract, but was an immediate assignment to the attorneys. Also his counsel contended that his claim to a portion of defendants' interests was by reason of an equitable lien. Early in the trial his counsel said, concerning the second cause of action to recover the reasonable value of services, that he did not think that *quantum meruit* was a proper cause of action. Near the close of the case he said in effect that he had not elected to abandon the *quantum meruit* cause of action. Also at the trial there was confusion on the part of appellant as to the date which he considered to be the date he was discharged. In his complaint he alleged that he was discharged on December 15, 1938. His counsel contended that the discharge occurred on July 30, 1937. In his deposition appellant testified that the contract and employment were never terminated.

As to appellant's theory of the case, it is clear, however, that he did not seek to recover upon the basis that he had performed the contract. He did not claim that he had done anything which resulted in benefit to defendants, except as to one matter and that was he had prepared and filed an

affidavit, signed by one of the defendants, concerning the bank trustee, which affidavit his counsel at the trial characterized as "vicious" and "libelous." Appellant testified that he believed that the bank trustee made the settlement by reason of his efforts particularly in the matter of the affidavit. Irrespective of the various theories of the case mentioned at the trial, it appears that his theory of the case is that he is entitled to recover because the defendants wrongfully discharged him and thereby prevented him from performing the contract.

As to the date of termination of the contract, the court found that Mr. Bull and Mr. Higgins signed a formal cancellation of it on January 13, 1938, and the court concluded that the contract was terminated by agreement of the parties on that date. Apparently the reasoning of the court in arriving at that conclusion was (1) that since plaintiff Shelley was adjudicated a bankrupt on September 14, 1937, and since the three attorneys undertook the employment under the contract as a special copartnership, that the partnership was dissolved by plaintiff Shelley's bankruptcy (Civ. Code, § 2425) and that the two nonbankrupt partners had the right to wind up the partnership affairs (Civ. Code, § 2431) ; and (2) that the two attorneys, as members of the copartnership comprised of the three attorneys, had a right to agree upon a termination of the contract which would be binding upon appellant irrespective of appellant's bankruptcy. Appellant argues that the matter of his bankruptcy is immaterial because he was discharged as an attorney for defendants on July 30, 1937, (when the letter was written by defendants) which was before he was adjudicated a bankrupt. By reason of the conclusions herein as to other points of this appeal, it is not necessary to determine whether the said two attorneys could terminate the contract by reason of the bankruptcy. The finding that the three attorneys undertook the employment as copartners is supported by the evidence. Appellant testified that the three attorneys represented defendants as associate counsel, that they were working together, and that they were acting collectively. Under the contract the defendants employed the three attorneys as a group and defendants were entitled to have the combined legal talents of the three attorneys applied in their behalf. On January 13, 1938, Mr. Bull and Mr. Higgins wrote the following across the face of the contract: "Los Angeles, Calif. January 13, 1938 We, the undersigned do hereby cancel and release the makers hereof from any lia-

bility on this Contract. Franklin P. Bull George D. Higgins.''
Regardless of whether those two attorneys had the right as
partners or associates of plaintiff Shelley to bind him by such
cancellation, the result of such act by them was that there-
after they were not attorneys for defendants in association
with Mr. Shelley or at all. If the cancellation of the contract by
them did not bind him, the result was that thereafter he was
the only attorney for defendants.  When the two attorneys
withdrew from the contract the defendants were not required
to accept the legal talents of plaintiff Shelley alone in lieu of
the combined legal talents of the three attorneys.  Presumably
the three attorneys were selected in the first instance by reason
of special capabilities of each one in different phases of the law.
There may have been many good and sufficient reasons why the
defendants would not be satisfied to depend on plaintiff
Shelley's legal ability alone.  As above indicated, he is not
seeking to recover fees on the basis that he had performed the
contract, but on the theory that the three attorneys had had a
contract with the defendants which the defendants should
have permitted him to perform alone, after the two other attor-
neys had cancelled the contract at least insofar as they them-
selves were concerned.  It is not necessary to decide whether
the cancellation of the contract by the two attorneys was
binding as a cancellation on behalf of appellant. The cancella-
tion by them, at least insofar as they themselves were con-
cerned, so changed the contract for representation of defen-
dants that appellant is not in a position to assert that defen-
dants wrongfully prevented him from performing the con-
tract.

The findings of the court, that there was good cause for
having written the letter of July 30, 1937, that there were
reasonable grounds for the request in the letter to terminate
the contract, and that defendants were fully justified in mak-
ing the request and securing the cancellation of the contract
which thereafter took place, are supported by the evidence.
The said letter stated, among other things, in referring to
the contract that ''We are accordingly hereby terminating it.''
That the evidence is sufficient to support these findings is
indicated in the discussion hereinafter made regarding the
finding that appellant did not use proper professional skill
or ability.

Appellant contends that the finding that he failed
to prosecute with proper professional skill or ability the vari-
ous proceedings had and taken on behalf of defendants is not

supported by the evidence. This contention is not sustained. All the actions and proceedings were in all respects unsuccessful and of no benefit to defendants. The mere fact, however, that he was not successful in the litigation would not warrant a conclusion that it was not prosecuted with proper skill or ability, but that fact is to be considered in connection with various other factors in determining whether he used proper skill or ability. The trial judge had before him as evidence the original files in the actions and proceedings which were taken on behalf of defendants. From a consideration of those files, including a consideration of the kind of action or proceeding taken and the object to be accomplished by it, the composition of the documents prepared by appellant, and the results obtained, the trial court was in a position to determine the fact, upon substantial evidence, whether appellant exercised proper professional skill or ability. His opening brief in the District Court of Appeal case did not state any ground of appeal, and for that reason his appeal was dismissed. The decision of the state Supreme Court was final before the contract was made, and no federal question was involved, and he represented that he could appeal to the United States Supreme Court. His petition to the state Supreme Court for permission to appeal to the United States Supreme Court was denied. Justice Sutherland of the United States Supreme Court denied his purported application to appeal to that court on April 14, 1937, and as late as November, 1937, about a year after the state Supreme Court decision had become final, he was continuing to try to appeal to the United States Supreme Court. His action in the federal district court was a collateral attack upon the judgment of the state Supreme Court, and the federal court sustained a demurrer to his complaint and gave judgment against his clients. All his objections in the Superior Court of Orange County to the account of the trustees were useless, and his charges of prejudice of the trial judge were unfounded. The finding to the effect that appellant did not use proper professional skill or ability cannot be disturbed. The defendants had good and sufficient cause to terminate the contract and were justified in securing the cancellation of it.

The finding that the services rendered by each of the attorneys were without value to the defendants and failed to secure any relief for them is sustained by the evidence. By reason of the conclusions herein it is not necessary to

decide the other contentions of appellant. Likewise it is not necessary to decide the contention of defendants to the effect that the suspension of appellant from the practice of law from July 24, 1938, to October 22, 1938, (which was after he had been removed as attorney for defendants) prevents his recovery herein.

The judgment is affirmed. The appeal from the order denying his motion for a new trial is dismissed, such order not being appealable.

Shinn, Acting P. J., and Kincaid, J. pro tem., concurred.

A petition for a rehearing was denied June 18, 1947.