[L. A. No. 15063. In Bank.—September 18, 1936.]

ELIZABETH IRVING BIXBY, Plaintiff and Appellant, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a Corporation) et al., Respondents; LILLIAN ODISHO BAJON, Defendant and Appellant.

James Donovan and Edgar L. Bishop for Appellants.

Denio, Hart, Taubman & Simpson for Respondents.

THOMPSON, J.—This is an appeal from a judgment for the defendants in an action to set aside a decree of distribution in the estate of Fanny Bixby Spencer on the ground that the entry of the decree was procured by the fraud of the executrix Empsie C. Freeman, the defendant bank, its trust officer, P. C. Scott, the attorneys for the executors and Chandler P. Ward, attorney for the plaintiff.

Fanny Bixby Spencer died testate on March 31, 1930, leaving an estate valued by the inventory and appraisement at $2,558,216.35. The will named W. Carl Spencer, her husband, and Empsie C. Freeman executor and executrix and, in brief, set up trusts for certain minors during the period of their minority and education, dividing the residue into seven parts. The seven residuary legatees are W. Carl Spencer, Claire Whitaker (who had a life interest only in one-seventh of the residue), Lillian Odisho (Bajon), Kamea Okamoto, Mary R. Munson, Elizabeth Irving Bixby and Elizabeth Spencer White. The bulk of the estate was composed of stock in the Jotham Bixby Company and two other "family" corporations, none of which were listed on the stock exchange. At the time of Mrs. Spencer's death she was indebted to the Security-First National Bank of Los Angeles, defendant here, in the sum of $35,869.01, evidenced by notes and secured by 2,917⅓ shares of stock of the Jotham Bixby Company, and to that company in the amount of $87,844.36. Creditors' claims were filed and approved on both these claims. The executors thereafter borrowed from the bank, with the approval of the probate court, for the purpose of paying off and refinancing these debts, the sum of $123,713.37 and secured it by a pledge of 1458⅓ shares of Jotham Bixby Company stock.

All of the residuary legatees, including the plaintiff Elizabeth Irving Bixby, appear to have been almost entirely

dependent upon the bounty of the deceased even in her lifetime and almost immediately after her death, they individually, but with the help of the executors and their attorneys, arranged with the defendant bank for monthly loans with the understanding that repayment would be made upon distribution of the estate. On December 22, 1930, plaintiff executed a declaration of trust, in which the other residuary legatees joined, setting up a trust known as "trust L. B. 904" and, in pursuance of which the interests of the residuary legatees were assigned to the defendant bank as trustee. In November, 1932, the executors petitioned the probate court for and received authority to sell not to exceed 2,200 shares of the Jotham Bixby Company stock, of an appraised value of $382.95 a share, for $100 or more a share and, in January, 1933, 2,100 shares were sold for $100 a share to the Jotham Bixby Company. The plaintiff had instructed her attorney, Ward, to appear and protest the making of the order for sale, but Ward did not do so because he had been assured by the executrix, Mrs. Freeman, that no sale would be made without the consent of the legatees. This agreement was, however, approved by the plaintiff prior to the hearing on the application for authority to sell. At a meeting held on January 11, 1933, and attended by all the residuary legatees . other than Kamea Okamoto, a minor for whom Spencer, and later the bank, was guardian, a draft of a decree of distribution was read and explained and a consent to the entry thereof signed by all of the legatees except the plaintiff, who signed it the next morning. At this meeting it was made clear that the board of directors of the Jotham Bixby Company was to act on the purchase of the 2,100 shares of stock at their meeting the next morning and they would not make the purchase unless all the legatees consented to the sale and signed the agreement to the entry of the decree distributing the estate to the bank in trust to make the monthly payments to the minors as directed by the will and hold the residue for the benefit of the residuary legatees. On February 3, 1933, the probate court entered a decree of distribution substantially in accordance with the agreement and approved the final account of the executors.

None of the legatees has received any income from the estate since distribution and the plaintiff Elizabeth Irving

Bixby brought this suit to set aside the decree on the ground that her consent to its entry had been procured by fraud and coercion. Others of the legatees cross-complained, but only Elizabeth Bixby and Lillian Odisho Bajon have taken an appeal from the judgment rendered against them.

The contention of appellants, in its essence, is, primarily, that the evidence is insufficient to support the findings to the effect that the appellants were not induced to consent to the decree by fraud or coercion. It would serve no useful purpose to detail the mass of testimony which abundantly supports the findings suggested, nor is it necessary to recite the testimony which explains the circumstances to which appellants point with the claim that they evidence a conspiracy to defraud. Suffice it to say that after reading not only the evidence printed in the briefs, but also the transcripts, it is manifest that every circumstance which appellants claim to be suspicious is satisfactorily explained and that the trial court was amply justified in concluding, as it did, that there was neither fraud nor coercion. In truth, the situation may be succinctly stated as follows: The residuary legatees and the executor and executrix found themselves faced with a declining market, a dwindling income, a considerable indebtedness and a very large administrative expense, including the state and federal income taxes, as well as the necessity, if possible, of providing an income for the living expenses of the legatees who had been supported by Mrs. Spencer. Under such circumstances the expedient and prudent course seemed to be to provide a means whereby the estate might be preserved intact, so far as possible, until such time as its income and value should be restored. The evidence believed by the trial court establishes that such was the desire and motive of the parties defendant.

Aside from the claim that the evidence is insufficient, it is urged that the probate court exceeded its jurisdiction when it rendered the consent decree because the trust for the benefit of the minors was altered from that established by the will, it being their contention that under the will the amount of money which was eventually to be paid to the minors should have been deposited in cash. We find no merit in this contention. A reference to the agreement entered into by the heirs and to the decree discloses that the

entire estate was distributed to the trustee, first, for the purpose of carrying out the testamentary trusts for the benefit of the minors and, second, for the purpose of holding the remainder in accordance with the terms of the trust established by the residuary legatees. The trustee was instructed by the court that, if the income was insufficient to carry out the testamentary trusts for the minors, resort might be had to the *corpus* for that purpose and, if necessary, a sale might be had with the approval of the court. In fact, none of the estate was to be relieved of the necessity of providing funds to protect the beneficial interests of the minors until there should have been accumulated in the testamentary trusts a sum equal to one hundred and twenty-five per cent of the maximum sum required to provide the payments to the beneficiaries as outlined in the will. It nowhere appears in the decree that there is a conflict between the terms of the will and the decree. And in substance there is none. However, it cannot be doubted that the court had jurisdiction of the subject-matter and of the parties. Upon it devolved the duty of determining the persons to whom distribution should be made and the portions to which each was entitled. This it did. And, there having been no appeal from the decree of distribution, it is a final and conclusive establishment of who are the distributees and the portions to go to each. The will may not be used to impeach the decree any more than other evidence might be used for a similar purpose. (*Goad* v. *Montgomery,* 119 Cal. 552 [51 Pac. 681, 63 Am. St. Rep. 145]; *Warren* v. *Ellis,* 39 Cal. App. 542 [179 Pac. 544]; *Manning* v. *Bank of California Nat. Assn.,* 216 Cal. 629 [15 Pac. (2d) 746].)

Aside from what has been said it is to be noted that none of the minors are here contesting the decree. The appellants entered into the agreement and consented to the decree as rendered without the inducement of fraud or the compulsion of coercion. They cannot now be heard to complain.

The judgment is affirmed.

Seawell, J., Shenk, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.