[Civ. No. 17120. First Dist., Div. Two. Apr. 3, 1957.]

HELEN L. O'FARRELL, as Administratrix, et al., Plaintiffs and Appellants, v. AMERICAN TRUST COMPANY (a Corporation), Defendant and Appellant; ROBERT WALKER CRAIG et al., Respondents; MAUD AGNEW et al., Cross-Defendants and Appellants.

Barrett & Harkleroad and Dudley Harkleroad for Plaintiffs and Appellants.

Brobeck, Phleger & Harrison for Defendant and Appellant.

Alden Ames, Pillsbury, Madison & Sutro, Maurice D. L. Fuller, Francis N. Marshall, Frank M. Bowen, Morrison, Foerster, Holloway, Shuman & Clark, W. T. Fitzgerald, Robert S. Beach and J. Thaddeus Cline for Cross-Defendants and Appellants.

John B. Ehlen, Warren H. Atherton, Jack C. Dozier and Leonard Ratner for Respondents.

BRAZIL, J. pro tem.*—The several appeals are taken from a judgment based on an interpretation of an inter vivos trust agreement. A complaint was filed by plaintiff against the American Trust Company, as trustee, to compel distribution directly to her of the corpus of the trust on the death of the last beneficiary. The trustee cross-complained by naming the heirs of the original trustor, and the devisees and legatees

*Assigned by Chairman of Judicial Council.

of said trustor's will, as parties defendant; and asked the court to determine the several claims by a court ruling on the original trust agreement. The appeal of the American Trust Company, as trustee, is of a technical nature; and, having nothing to do with the respective rights of the plaintiffs and the two groups of defendants, will be disposed of at the conclusion of this opinion.

William Martin Craig made an agreement on July 17, 1934, with the American Trust Company to convey valuable real property to it, in trust for certain expressed purposes. The conveyance was actually made on June 23, 1938; and on November 6, 1939, he made his will. The corpus of the trust was the trustor's separate property, he having married Frances Craig shortly before the date of the original trust agreement. No changes were made in that agreement from the time it was signed until Mr. Craig died, childless, on October 13, 1942. The wife survived him; and she died intestate on January 26, 1954, leaving as her sole heirs three children by a former marriage. Helen O'Farrell appears here as the original plaintiff in her capacity as administratrix of her mother's estate.

The respondents are the persons who claim the remainder as a class of devisees and legatees of the trustor. They are 24 in number, representing 20 living people and estates of four persons named in the will who died after the trustor and before the beneficiary, Mrs. Craig. One group of appellants consists of nine first cousins of Mr. Craig who claim the property as members of a class who otherwise would get the property as heirs under the laws of succession if there had been no will; and the other appellant is the administratrix of the estate of Mrs. Craig representing herself and two others as natural children of Mrs. Craig in whom they claim the property is vested before her death. For the sake of brevity only, and not by way of accurate description, the respondents will be called legatees, the nine appellants, heirs, and the other appellant, the widow.

The dispute arises from an interpretation of paragraph 11 of the trust agreement, by the provisions of which each of these parties claims to be entitled to the corpus of the trust.

"Eleventh: Upon the death of said Frances Rader Craig, unless said trust is sooner terminated as herein provided, said trust shall terminate and all property then in said trust, both corpus and income, after the payment of all expenses of said trust shall be freed therefrom and if said trustor shall then

be dead, shall be subject to disposition according to the probate law of the State of California in force at that time.''

Over objection of both appellants, the trial judge admitted in evidence as an aid in construing the foregoing paragraph, as indicated in his written opinion, the 1939 will of Mr. Craig, and the report of the inheritance tax appraiser in his estate. Respondent claims the result should be the same whether or not the court was correct in its ruling on the admissibility of such evidence. Each appellant takes a position that there is no ambiguity in paragraph 11, that ''according to the probate law'' means according to the laws of succession. The widow says the remainder was vested upon trustor's death in her as being trustor's sole heir and so her estate gets the property. The heirs maintain the remainder was vested in them when Mrs. Craig died and, therefore, being members of the class described as next of kin or heirs, the property is lawfully theirs.

The only issue before this court is the interpretation of the quoted dispositive clause of the inter vivos trust agreement, other than issues pertaining to the admission of evidence. Actually, the parties have narrowed the first issue even further to an interpretation of the expression ''according to the probate law of the State of California in force at that time.'' As will be explained later, neither appellant can afford to take the position that the clause in question is so ambiguous as to defy reasonable construction for in such case neither could ultimately prevail.

Despite the express statement of the trial judge appearing in his written opinion that he did not consider the payment of the inheritance tax on the whole estate of the testator-trustor, including the trust fund, as any aid to construction; and that the elements of estoppel were lacking, the respondent persists that both such special defenses are justified by the record. ■ ''The order fixing inheritance taxes, which may incidentally determine questions in regard to succession and beneficial ownership, is not binding except for tax purposes as between those who claim the estate, whether as heirs, legatees, or beneficiaries of a trust extrinsic to the will.'' (*Estate of Rath*, 10 Cal.2d 399, 406 [75 P.2d 509, 115 A.L.R. 836].)

■ The appellants are not estopped to assert their claims, simply because when the order for payment of inheritance tax in Mr. Craig's estate was made, and when the remainder was taxed to the legatees, they made no protest. As the trial court stated—The required elements of estoppel are lacking.

We think it clear that the court was called upon, in construing the meaning of paragraph 11 of the trust agreement, to find out what the trustor meant by what he said at the time he said it on July 17, 1934. It was not called upon to find out what he could or should have done. ''The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity'' (Civ. Code, § 1638). ''For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret'' (Code Civ. Proc., § 1860).

Both appellants assert it was error to use the will of 1939 or the circumstances surrounding its execution, as an aid in the construction of paragraph 11, claiming that trustor's state of mind or his conduct in 1939 has no bearing whatever on what he intended in 1934 by what he actually said in the trust agreement. In justifying use of the latter will to assist in the interpretation of the trust agreement, the court said ''In any event, assuming that section 101 of the Probate Code is not applicable, surely the will may be looked to as extrinsic evidence tending to explain ambiguity in the trust. (*Security-First Nat. Bank* v. *Ogilvie,* 47 Cal.App.2d 787 [119 P.2d 25].)'' That case does not support the court's observation for there the court was dealing with a contemporaneous property settlement agreement; not an unconnected instrument of a much later date. Respondent cites many other cases for the same purposes, but none of them goes so far as to say that a later executed unconnected document may be received in evidence to construe an earlier ambiguous statement. Limitation of space precludes a discussion of each case so cited and yet differentiation is apparent as is shown in the appendix to appellant-heirs' brief. One of the cases cited by respondent in support of the court's ruling is *Estate of Sargavak,* 35 Cal.2d 93 [216 P.2d 850, 21 A.L.R.2d 307], which, however, actually points out the distinction which the trial court and respondent have failed to make. We quote from page 96 thereof:

''The extrinsic evidence in this case consists for the most part of the oral declarations of the testatrix before and after the execution of the instrument in question. Such declarations, whether made at, before, or after the execution of the instrument are admissible, if offered for the purpose of ascertaining the intent with which the instrument was executed

[citations], and not for the purpose of proving the meaning the testator attributed to specific provisions of an admitted will [citations]. 'Such . . . declarations of intent to make a will are admissible when the attempt is not to explain an ambiguity but to show the testamentary character of a letter.' "

Oral declarations of a decedent, whether made before, at the time, or after, are excluded in connection with a matter of construction of a document unless they be instructions to the scrivener. (Prob. Code, § 105.) "An exception to the exclusion of oral declarations of the testator is his instructions to a scrivener when offered to resolve an ambiguity in a will concerning the amount of a bequest." (*Estate of Resler*, 43 Cal.2d 726, 734 [278 P.2d 1].)

The will of 1939 and the resultant decree of distribution were admissible to indicate the proper disposition to be made of the property in the inter vivos trust if the phrase "probate law" included disposition by will. They were also generally admissible, as they were pleaded in the trustee's cross-complaint to which all parties answered. ■ While the evidence here is admissible for certain purposes, it was not admissible for the purpose of showing what Mr. Craig meant by what he said in 1934 at the time he said it. As a matter of fact we are inclined to agree with appellants that there is little, if anything, in the will which can be of any assistance in interpreting the inter vivos agreement. A reversal is not a necessary result of holding it was error to admit the will in aid of interpretation of the earlier trust agreement.

It is the claim of the widow that the crucial eleventh paragraph expresses the meaning that the trust property upon the death of the life tenant Frances Rader Craig goes to the heir or heirs of the trustor; that Frances was his only heir; that the property, therefore having at William's death vested in his sole heir, as a vested remainder in her, should be distributed to her heirs, not to the heirs or to the legatees of William. The widow-appellant can prevail only if it be established that Frances had a vested remainder, for her heirs would not be entitled to anything "under probate law" if it vested after her death.

The widow argues that one of the strongest rules of the law is that of favoring the early vesting of future interests, and that, applying that rule to this trust, it should be held that the corpus vested in Frances as early as possible which would be when the trustor died. ■ A remainder is deemed

vested rather than contingent, if the question be doubtful
and every testamentary interest will be presumed to be vested
unless a contrary intention is clearly manifest (*Estate of
Rider*, 199 Cal. 724 [251 P. 799]).

However, the "early vesting" rule is not the cardinal
rule of construction. "In the construction of wills the
paramount rule, to which all others must yield, is that a
will is to be construed according to the intention of the tes-
tator, as expressed therein, and this intention must be given
effect as far as possible." (*Estate of Lawrence*, 17 Cal.2d 1,
6 [108 P.2d 893].)

The following considerations here set forth seem to
compel a finding that the trustor did not intend to create a
trust the remainder of which vested in his wife. At the end
of her life estate, she would be dead and so could never per-
sonally enjoy the remainder. It is argued by the widow that, if
there is a gift to a class following a life tenancy, the life tenant,
if a member of the class, participates by representation in
the remainder, citing *Gilman* v. *Congregational Missionary
Home Soc.*, 276 Mass. 580 [177 N.E. 621] and *Crowell* v.
*Chapman*, 257 Mass. 492 [154 N.E. 397]. However, in *Estate
of Wilson*, 184 Cal. 63 [193 P. 581], where the testatrix had
left a life estate to her son, remainder "among my heirs,"
the estate was held to go to testatrix' cousins, her heirs as of
the time of her son's death, rather than to her son's (her only
heir at her death) heir, his wife. In the instant case, as in
the Wilson case, there was only one heir (Mrs. Craig) at
trustor's death and, similarly, the inter vivos trust agreement
in other paragraphs used the plural when referring to bene-
ficiaries and remaindermen.

The language referring to the remainder certainly speaks
*in futuro*. It refers to the probate law at the time of the
wife's death. It is true that the probate code is amended
rarely, but that does not mean that it cannot be amended.
Why would a trustor, intending to create a presently vested
interest, use words of futurity, which could only defeat his
purpose? The words of futurity, so used, make it impossible
for the remainder to have vested upon the death of the
trustor.

*Estate of Newman*, 68 Cal.App. 420 [229 P. 898], wherein
the words "heirs, wherever and whoever they may be" were
held to mean "heirs" in the technical meaning of the word,
no special significance was attached to the phrase "wherever
and whoever they may be." The court construed the last

quoted phrase to be an ordinary expression of a testator who expected to live for yet some time, and did not of themselves indicate futurity of vesting.

A determination that the widow did not acquire a vested remainder, so that her children who are unrelated to the trustor, would not take the corpus of the trust, finds support in the general presumption of law that one intends to bequeath to one's heirs by blood, rather than to strangers. Whatever has heretofore been said about the widow's appeal compels affirmance of the judgment against her without regard to a judicial interpretation of the phrase "according to probate law." An additional ground appears for the same result, if the trial court is correct in finding that "according to probate law" applies to testate as well as intestate succession.

Self-interest requires each appellant to assert that the wording of paragraph 11 is not ambiguous, and that its meaning can and should be ascertained from the instrument alone. If it is so ambiguous that its meaning cannot be found, then the property would go to the executor of trustor's will under the rule that a trustor retains all of the trust property not embraced in the trust and not otherwise disposed of (Civ. Code, § 866). The same thing would occur if the trust agreement were construed to give trustor a power of appointment, which power would have been exercised by the will which was admitted to probate.

The appellants and respondents appear agreed that a remainder was created, that the property should pass directly to the persons entitled to it under paragraph 11 of the trust agreement as remaindermen; and that each party represents a class ascertained by resort to the expression "according to probate law," whatever that may mean. The widow and the heirs say that means them because the expression means "under the laws of succession"; and the widow says her estate should get it because the remainder vested on the trustor's death, and the heirs say "not so," it is theirs because the remainder was contingent on the death of Mrs. Craig, the life tenant, at which time the members of the class could be ascertained. The respondent legatees say they are the remaindermen ascertained at the death of Mrs. Craig by resort to a will executed by the trustor. The widow-appellant does not seriously contend that the dispositive clause of paragraph 11 meant a disposition to the heirs of the surviving life tenant directly as a class of remaindermen, for it

is apparent that the trustor was referring to himself, rather than his wife, when making disposition of the remainder.

"According to probate law" is not an abstruse expression which should cause any great difference of opinion as to its meaning. The fact that counsel has been unable to find a case defining the meaning of the exact words used proves nothing; for it is just as likely that no exact case appears for no one thought the expression ever needed a judicial definition; as it is that the exact wording has never been used before to make a disposition of a remainder. The expression probate law or probate matters are certainly not unfamiliar terms.

■ " 'Matters of probate' *include* the ascertainment and determination of the persons who succeed to the estate of a decedent, *either as heir, devisee, or legatee*," (Martinovich v. *Marsicano*, 137 Cal. 354 [70 P. 459]).

The trial judge is correct in referring to the meaning of "according to probate law" when he stated "the words refer to the *probate* law. ■ The statute of succession is but part of the probate law. ■ The 'probate law' relates to wills, the manner of executing and proving and interpreting them, as well as to intestacy. ■ Here, again, if the trustor had chosen to leave the remainder to 'those who should be my heirs, at the time of the death of the life tenant,' he could have said so. When he referred to the probate law, he meant the law relating to wills if he died testate, and the law of succession as of the death of the life tenant if he died intestate. We must judge what he intended by what he said." This understandable and concise statement requires no elaboration.

If "according to probate law" be an unambiguous expression, as contended by both the appellants, it cannot reasonably be said that getting property by legacy under a will is not according to probate law; and only getting it by way of intestate succession is according to probate law. ■ Appellant-widow in her opening brief first observes under the heading "What is the True Meaning of 'Probate Law' "? that "The trial Court took the position of assuming its usual meaning, that it is that body of law pertaining to all phases of the law regarding Wills, administration of estates, succession of property upon death and matters of guardianship." That is what courts are supposed to do in finding out what a person meant by what he said, either orally or in writing (Civ. Code, § 1644).

■ Appellants contend the judgment is inconsistent in

that four of the 24 persons who were named in Mr. Craig's will died after him and before the death of his wife; so that the persons not living at the time of ascertainment of probate law in force at the time share in the property as remaindermen. If this be contradictory, it would be for the remaining 20 legatees to complain and not for these appellants, who are not thereby aggrieved. The judgment is not, however, inconsistent for the property goes to a class which under the probate laws in force when Mrs. Craig died is disclosed by the will and decree of distribution introduced in evidence.

The correctness of the judgment can be ascertained by making and answering the following separate inquiries: When the persons named as legatees in the trustor's will got the corpus of the trust, was the membership of their class as remaindermen determined in accordance with probate law? If the heirs, as distinguished from legatees (the trustor having left a will) had obtained the corpus by determining who they were under the laws of succession, would that determination have been according to probate law?

According to probate law, property of a decedent is distributed to the legatees and devisees named in a valid will, rather than to those persons who would otherwise inherit under the laws of succession. The trustor in the inter vivos trust agreement said the members of the class of remaindermen would be determined "according to probate law," not "according to probate law minus the parts thereof relating to wills."

The American Trust Company, as trustee, appeals in order to clarify its rights and duties in respect to the trust property and to make sure that jurisdiction is retained to settle accounts and award compensation for services performed. The suggested amendment, while correct in its phrasing, is unnecessary for the judgment as it now stands includes all its suggestions at least by necessary implication. Appellant-trustee shall not be entitled to nor shall it be charged with any costs on appeal.

Judgment affirmed.

Kaufman, P. J., and Dooling, J., concurred.

Petitions for a rehearing were denied May 3, 1957.