[Sac. No. 7835.   In Bank.   Jan. 20, 1969.]

Estate of E. W. CALLNON, Deceased. JOHN G. CALLNON, Individually and as Trustee, etc., Petitioner and Appellant, v. MAXINE WINROTT, as Administratrix, etc., Contestant and Respondent.

White, Harber, Fort & Schei, Lawrence A. Schei and Gene Pendergast, Jr., for Petitioner and Appellant.

Chickering & Gregory and Charles G. Stephenson for Contestant and Respondent.

SULLIVAN, J.—This is an appeal from a portion of a judgment declaring the termination of a testamentary trust upon the death of decedent's son, the life beneficiary, and ordering distribution of the balance of the corpus to decedent's sister. The crucial issue confronting us is whether under the provisions of the decree of final distribution entered in the probate proceedings over 30 years ago, such remainder should go, as the trial court held, to the legal representative of decedent's sister who predeceased decedent's son, upon the basis that it was a vested remainder, or should go to decedent's heirs upon the basis that as to such part of his estate, decedent died intestate. We have concluded that it should have been distributed to decedent's heirs. We, therefore, reverse the judgment as to that portion thereof appealed from.

E. W. Callnon died testate in the County of Sacramento on January 2, 1936, survived by a son, John W. Callnon and a sister, Anna Elliott. By his will dated July 31, 1935, which was admitted to probate, the testator after giving to Anna a life estate in certain real property in San Francisco and to a friend a life estate in certain real property in Sacramento, devised and bequeathed the residue of his estate to Anna in trust to pay the entire net income of the trust and such por-

tions of the principal as the trustee deemed necessary, to John[1] during the latter's life.

The final paragraph of article THIRDLY of the will provided: "Upon and at the time of the demise of my said son, John W. Callnon, this trust shall cease and terminate and the entire trust estate *shall go to and vest in my said Trustee.*" (Italics added.)[2]

On November 16, 1936, the executor filed his final account and petitioned for final distribution. In its reference to the distribution of the corpus of the trust upon the death of the life beneficiary, the petition repeated word for word the above quoted final paragraph of article THIRDLY except that it omitted the pronoun "my" and added Anna's name at the end of the provisions.[3] On November 30, 1936, the court made its "ORDER AND DECREE OF SETTLEMENT OF ACCOUNT AND FINAL DISTRIBUTION." The provisions of this decree relating to the final distribution of the residue of the estate to the trustee, repeated word for word the corresponding paragraphs of article THIRDLY of the will dealing with the powers of the trustee and the distribution of the income and principal of the trust except that in the provisions dealing with the termination of the trust and the distribution of the corpus, the court added certain language not found in the final paragraph of article THIRDLY or in the petition for final distribution. In this respect the decree provided: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that upon and at the time of the demise of said son, John W. Callnon, this trust shall cease and terminate and the entire trust estate shall go to and vest in said Trustee, Anna Elliott *if said Anna Elliott survives said John W. Callnon.*" (Italics added to indicate additional language.)[4] The decree made no provision for distribution of the

---

[1]At the time of testator's death John W. Callnon was aged 50 and Anna Elliott was aged 62.

[2]Article THIRDLY of the will contained the terms of the trust and the powers of the trustee; article FOURTHLY spendthrift provisions; article FIFTHLY disinheritance and no contest provisions. In article SIXTHLY of the will the testator appointed Charles O. Busick as a substitute trustee in the event of the death of Anna, either before or after the death of testator, or in the event of her neglect, refusal or inability to act as trustee. In article SEVENTHLY, Busick was nominated executor.

[3]The pertinent allegation of the petition thus read as follows: "Upon 'and at the time of the demise of said son, John W. Callnon, this trust shall cease and terminate and the entire trust estate shall go to and vest in said Trustee, *Anna Elliott.*" (Italics added.)

[4]The record before us does not indicate whether the probate court received any evidence which may have resulted in the additional language of the decree.

corpus if Anna did *not* survive the life beneficiary. No appeal was ever taken from the decree of final distribution and it has long since become final. On December 9, 1936, an order fixing inheritance tax was made in the probate proceedings in which the value of the life estate was assessed to John and the value of the remainder to Anna.

Anna Elliott served as trustee under testator's will until March 1955 when she resigned. She died later the same year. Charles O. Busick was appointed as alternative trustee pursuant to the will. (see fn. 2, *ante*); he acted as trustee until his death in 1957. Thereafter John G. Callnon, the son of John W. Callnon and the grandson of testator, was appointed to fill the vacancy; he served as trustee until the termination of the trust.

The trust continued until March 21, 1966, when John W. Callnon, the life beneficiary, died. On June 3, 1966, John G. Callnon the trustee and appellant herein filed his "EIGHTH ANNUAL AND FINAL ACCOUNT AND REPORT OF TRUSTEE AND PETITION FOR SETTLEMENT, FOR ALLOWANCE OF COMPENSATION AND FOR FINAL DISTRIBUTION." The petition prayed for distribution of the trust estate to the heirs of E. W. Callnon according to the laws of intestate succession.[5] The basis of the prayer was that the decree of final distribution provided that Anna Elliott was to have the remainder only "if said Anna Elliott survives said John W. Callnon"; that Anna died in 1955 and John W. Callnon in 1966; that no provision was made in the decree for distribution of the corpus of the trust in the event Anna predeceased John; and that, therefore, the trust estate must pass as intestate property of E. W. Callnon.

Respondent Maxine Winrott, a daughter of Anna Elliott and administratrix of her estate, filed her objections to the trustee's final account and petition for distribution.[6] Respondent's position was that the decree of distribution did not dispose of the trust estate in the event of Anna's death

---

[5] All of the property here involved was the separate property of E. W. Callnon. Decedent's wife predeceased him and he was survived by his sole child, John W. Callnon, the life beneficiary of the trust. John W. Callnon in turn left three children surviving him: John G. Callnon, Gene W. Callnon and Francis W. Callnon.

[6] The record discloses that on August 2, 1966, Maxine filed such objections in her individual capacity as "daughter and sole beneficiary" of Anna and that on October 21, 1966, she was appointed administratrix of Anna's estate by the Superior Court of the City and County of San Francisco. As we point out, the remainder of the estate was subsequently distributed to her in her capacity as administratrix. She has participated in these proceedings both in the trial court and on appeal in such capacity. No defect in the proceedings has been urged because of the foregoing developments.

prior to the termination of the trust and was, therefore, incomplete. Invoking the rule that resort may be had to the will if the decree of distribution is uncertain, vague or ambiguous, she claimed that because the decree was incomplete, it was uncertain and ambiguous thus allowing the court to refer to the will to find testator's intent. According to respondent, the will clearly showed that Anna was to have a vested remainder which could not be defeated by Anna's predeceasing the life beneficiary. Since Anna died intestate respondent prayed that the trust estate be distributed to her as administratrix.

After a hearing on the petition and objections thereto, the trial court found that the decree of final distribution made on November 30, 1936, was "ambiguous insofar as the ownership of the trust remainder is concerned" necessitating reference to the testator's will and concluded on the basis of the will that "Anna Elliott was vested with ownership of the remainder and that such ownership was not conditioned upon her survival of the life beneficiary." The court accordingly ordered all of the assets remaining in the trust, after payment of fees and expenses, distributed to respondent Maxine Winrott, as administratrix. On December 28, 1966, the court entered judgment ordering distribution of the remainder to "Maxine Winrott, as Administratrix of the Estate of Anna Elliott, Deceased." Appellant individually and as trustee appeals from that portion of the judgment[7] ordering distribution of the trust. (Prob. Code, § 1240.)[8]

The positions of the parties on appeal may be summarized as follows: Appellant contends that the 1936 decree of final distribution is the measure of the rights in dispute and, being free of ambiguity or uncertainty, clearly makes Anna's interest in the remainder of the trust subject to the express condition that she survive John. Respondent on the other hand, as Anna's representative, maintains that the decree is ambiguous as to whether Anna's ownership of the remainder is or is not contingent upon her surviving John, that the trial court properly referred to decedent's will in order to clarify and interpret the survivorship condition, and that upon such reference it clearly appeared that Anna was given a vested remainder

[7]*"Judgment Settling Account, Allowing Compensation, Terminating Trust and Ordering Distribution"* was filed in the court below on December 28, 1966.

[8]Hereafter unless otherwise indicated all section references are to the Probate Code.

which could not be defeated by her failure to survive the life beneficiary.

"The administration of a decedent's estate involves a series of separate proceedings, each of which is intended to be final . . . ." (*Estate of Loring* (1946) 29 Cal.2d 423, 428 [175 P.2d 524]; accord: *Estate of Van Deusen* (1947) 30 Cal.2d 285, 290 [182 P.2d 565].) A decree of distribution is a judicial construction of the will arrived at by the court ascertaining the intent of the testator. (*Whittingham* v. *California Trust Co.* (1931) 214 Cal. 128, 132 [4 P.2d 142]; *Estate of Scrimger* (1922) 188 Cal. 158, 165 [206 P. 65]; *Wills* v. *Wills* (1913) 166 Cal. 529, 532 [137 P. 249]; *Toland* v. *Earl* (1900) 129 Cal. 148, 152 [61 P. 914, 79 Am.St.Rep 100]; *Williams* v. *Marx* (1899) 124 Cal. 22, 24 [56 P. 603]; *Cunha* v. *Hughes* (1898) 122 Cal. 111-112 [54 P. 535, 68 Am.St.Rep. 27]; *Jewell* v. *Pierce* (1898) 120 Cal. 79, 82 [52 P. 132]; *Matter of Trust of Trescony* (1898) 119 Cal. 568, 570 [51 P. 951]; *Goad* v. *Montgomery* (1898) 119 Cal. 552, 557 [51 P. 681, 63 Am.St. Rep. 145].) Once final, the decree supersedes the will (*Estate of Easter* (1944) 24 Cal.2d 191, 194 [148 P.2d 601]; *Keating* v. *Smith* (1908) 154 Cal. 186, 191 [97 P. 300])[9] and becomes the conclusive determination of the validity, meaning and effect of the will, the trusts created therein and the rights of all parties thereunder. (*Estate of Careaga* (1964) 61 Cal. 2d 471, 475 [39 Cal.Rptr. 215, 393 P.2d 415]; *Estate of Loring, supra,* 29 Cal.2d 423, 427; *Estate of Scrimger, supra,* 188 Cal. 158, 164; § 1021.)[10]

[9]Accord: *Estate of Parsell* (1923) 190 Cal. 454, 456 [213 P. 40, 25 A.L.R. 1561]; *Estate of Scrimger, supra,* 188 Cal. 158, 165; *Wills* v. *Wills, supra,* 166 Cal. 529, 532; *Bacon* v. *Bacon* (1907) 150 Cal. 477, 482 [89 P. 317]; *Toland* v. *Earl, supra,* 129 Cal. 148, 152; *McKenzie* v. *Budd* (1899) 125 Cal. 600, 602 [58 P. 199].

[10]Accord: *Estate of Bissinger* (1964) 60 Cal.2d 756, 762 [36 Cal.Rptr. 450, 388 P.2d 682, 19 A.L.R.2d 506]; *Estate of Ferry* (1961) 55 Cal.2d 776, 782 [13 Cal.Rptr. 180, 361 P.2d 900, 90 A.L.R.2d 300]; *Estate of Eckstrom* (1960) 54 Cal.2d 540, 544-545 [7 Cal.Rptr. 124, 354 P.2d 652]; *Federal Farm Mtge. Corp.* v. *Sandberg* (1950) 35 Cal.2d 1, 4 [215 P.2d 721]; *Estate of Van Deusen, supra,* 30 Cal.2d 285, 290; *Estate of Easter, supra,* 24 Cal.2d 191, 194; *Estate of Goldberg* (1938) 10 Cal.2d 709, 713 [76 P.2d 508]; *Bixby* v. *Security-First Nat. Bank* (1936) 7 Cal.2d 424, 428 [60 P.2d 862]; *Estate of Den* (1935) 3 Cal.2d 638, 640 [45 P.2d 963]; *Manning* v. *Bank of California* (1932) 216 Cal. 629, 634 [15 P.2d 746]; *Whittingham* v. *California Trust Co., supra,* 214 Cal. 128, 132; *Shipley* v. *Jordan* (1929) 206 Cal. 439, 440 [274 P. 745]; *Estate of Horman* (1914) 167 Cal. 473, 475 [140 P. 11]; *Wills* v. *Wills, supra,* 166 Cal. 529, 531; *Luscomb* v. *Fintzelberg* (1912) 162 Cal. 433, 438-439 [123 P. 247]; *Estate of Fitzgerald* (1911) 161 Cal. 319, 325 [119 P. 96, 49 L.R.A. N.S. 615]; *Keating* v. *Smith, supra,* 154 Cal. 186, 191; *McCloud* v. *Hewlett* (1902) 135 Cal. 361, 367 [67 P. 333]; *More* v. *More* (1901) 133 Cal. 489, 494 [65 P. 1044, 66 P. 76]; *McKenzie* v. *Budd, supra,* 125

If the decree erroneously interprets the intention of the testator it must be attacked by appeal and not collaterally. (*Estate of Easter, supra,* 24 Cal.2d 191, 194; *Miller* v. *Pitman* (1919) 180 Cal. 540, 543 [182 P. 50].)[11] If not corrected by appeal an ''erroneous decree . . . is as conclusive as a decree that contains no error.'' (*Estate of Loring, supra,* 29 Cal.2d 423, 432; accord: *Estate of Eckstrom, supra,* 54 Cal.2d 540, 545; *Estate of Goldberg, supra,* 10 Cal.2d 709, 713; *Whittingham* v. *California Trust Co., supra,* 214 Cal. 128, 132.) It is well settled that ''where the decree of distribution is contrary to the provisions in the will, the decree controls and prevails over the terms of the will with respect to the distribution of the property.'' (*In re Ewer* (1918) 177 Cal. 660, 662 [171 P. 683]; accord: *Estate of Eckstrom, supra,* 54 Cal. 2d 540, 545; *Estate of Scrimger, supra,* 188 Cal. 158, 165; *Wills* v. *Wills, supra,* 166 Cal. 529, 532; *Luscomb* v. *Fintzelberg, supra,* 162 Cal. 433, 438-439; *Keating* v. *Smith, supra,* 154 Cal. 186, 191; *Matter of Trust of Trescony, supra,* 119 Cal. 568, 570.) Only if the language of the decree is ''uncertain, vague or ambiguous'' (*In re Ewer, supra,* 177 Cal. 660, 662) may resort be had to the will to interpret but not to contradict the decree. (*Estate of Goldberg, supra,* 10 Cal.2d 709, 713; *Bixby* v. *Security-First Nat. Bank, supra,* 7 Cal.2d 424, 428; *McCloud* v. *Hewlett, supra,* 135 Cal. 361, 368; *Goad* v. *Montgomery, supra,* 119 Cal. 552, 557.) However, ''if the distributive portions of the decree are free from ambiguity, . . . resort may not be had to the provisions of the will . . .'' in order to create an ambiguity. (*Estate of Norris* (1947) 78 Cal.App.2d 152, 160 [177 P.2d 299].)

We have concluded that the decree of distribution is not ambiguous or uncertain. It clearly provides that on the death of the life beneficiary the trust estate ''shall go to and vest in said Trustee, Anna Elliott *if said Anna Elliott survives said John W. Callnon.''* (Italics added.) The italicized

Cal. 600, 602; *Williams* v. *Marx, supra,* 124 Cal. 22, 24; *Cunha* v. *Hughes, supra,* 122 Cal. 111, 112-113; *Jewell* v. *Pierce, supra,* 120 Cal. 79, 82; *Matter of Trust of Trescony, supra,* 119 Cal. 568; *Goad* v. *Montgomery, supra,* 119 Cal. 552, 557.

[11] Accord: *Bixby* v. *Security-First Nat. Bank, supra,* 7 Cal.2d 424, 428; *Manning* v. *Bank of California, supra,* 216 Cal. 629, 634; *Whittingham* v. *California Trust Co., supra,* 214 Cal. 128, 134; *Estate of Horman, supra,* 167 Cal. 473, 475-476; *Wills* v. *Wills, supra,* 166 Cal. 529, 532; *Luscomb* v. *Fintzelberg, supra,* 162 Cal. 433, 439; *Estate of Learned* (1909) 156 Cal. 309, 311 [104 P. 315]; *Bacon* v. *Bacon, supra,* 150 Cal. 477, 482; *Williams* v. *Marx, supra,* 124 Cal. 22, 24; *Jewell* v. *Pierce, supra,* 120 Cal. 79, 82-83; *Matter of Trust of Trescony, supra,* 119 Cal. 568, 570; *Goad* v. *Montgomery, supra,* 119 Cal. 552, 557.

portion is unmistakably an express condition of survival that limits the circumstances under which the remainder is to pass to Anna. Giving effect to the substance of the provision as we are required to do when construing judgments (Civ. Code, § 3528; *Schisler* v. *Mitchell* (1959) 174 Cal.App.2d 27, 29 [344 P.2d 61]), the decree provides nothing more than if it were worded "residue in trust to John for life remainder to Anna if she survives John." Such a provision unquestionably devises nothing to the remainderman who predeceases the life tenant.

Our views find support in the many treatises on the subject as is illustrated by the following passage from 2 Tiffany, Real Property (3d ed. 1939) section 322, page 29: "As examples of a contingent remainder in favor of a person or persons ascertained, that is, of a remainder subject to a condition precedent other than the ascertainment of the remainderman, may be mentioned the case of a gift to A for life with remainder to B provided B survives A . . . ." (Accord: 5 American Law of Property (1952) § 21.31, p. 177; Ogden's California Real Property Law (1956) § 2.12, p. 23; 5 Page on Wills (Bowe-Parker ed. 1962) § 43.12, p. 369; 1 Simes and Smith, The Law of Future Interests (2d ed. 1956) § 135, pp. 114-115; 2 Witkin, Summary of Cal. Law (7th ed. 1960) p. 979. See § 122; Rest., Property, §§ 157, 250; *Estate of Washburn* (1909) 11 Cal.App. 735, 741 [106 P. 415]; *Phayer* v. *Kennedy* (1897) 169 Ill. 360, 364 [48 N.E. 828, 829-830]; *Dickey* v. *Citizens' State Bank of Fairmount* (1932) 98 Ind. App. 58, 63-64 [180 N.E. 36, 38]; *Shaw* v. *Eckley* (1897) 169 Mass. 119, 121 [47 N.E. 609, 610]; *Bamforth* v. *Bamforth* (1877) 123 Mass. 280, 282.) We need not determine whether the wording here used created a contingent remainder or a vested remainder subject to complete defeasance. The result will be the same regardless of the technical form of the remainder; Anna takes nothing unless she survives the life tenant.[12]

---

[12] "In a large number of cases in which the discussion proceeds as if the problem were merely whether the remainder is vested or contingent, the real question involved is simply whether there is a requirement that a certain devisee must survive until his interest becomes possessory; it being conceded that he has not so survived. In many of such cases the whole discussion of the distinction is irrelevant, because exactly the same result would be reached if the remainder in question were treated as contingent or as vested subject to complete defeasance on the death of the remainderman before termination of the particular estate. Thus, in a limitation to A for life and then to B and his heirs if he survives A, the interest of B ends when he predeceases A, whether we classify the interest as contingent or as vested subject to complete defeasance." (Simes

In support of her contention that the decree is ambiguous respondent asserts that it is not clear from the language *"shall go to and vest in said Trustee, Anna Elliott if said Anna Elliott survives said John W. Callnon"* whether the condition of survival refers to Anna's *ownership* of the remainder interest or merely to her *possession* of that interest. Respondent argues that the condition of survival can be construed in three different ways: 1) that both ownership and possession by Anna are conditioned upon her survival; 2) that the condition modifies *only* the words "shall . . . vest in" which grant *possession* to Anna and the words "shall go to" grant *ownership* and are not subject to the condition; and 3) that the entire italicized provision refers only to Anna's *possession* of the remainder and it alone requires survival. Respondent cites several cases which have involved the disposal of future interests by language similar to *"shall go to and vest in."*[13] Some of these cases have held that such language controls the devolution of *ownership* of the property in question while others have held that the language controls only its *possession*. Respondent asserts that these cases give rise to the three interpretations of the remainder clause in the instant case.

This argument is without merit. *Whatever* interest Anna was to have in the remainder of the estate was derived from the provision of the final decree here in issue; no other provision of the decree purported to dispose of any portion of the remainder. Whether the clause gave her ownership or possession she was required by an express condition to survive the life beneficiary in order to take anything. Since she predeceased John W. Callnon any interest she had in the remainder "vanished into thin air." (*Estate of Haney, supra,* 174 Cal. App.2d 1, 8.) The cases cited by respondent are easily distinguishable. The absence of an express condition of survival in those cases made it necessary for the courts to construe the specific language in order to determine if a condition of survivorship was contained by *implication*. In the instant case, however, the language of "shall go to and vest in" is found in the context of a provision containing an *express* condition

and Smith, *op. cit. supra,* at § 135, pp. 114-115. See Halbach, *Future Interests: Express and Implied Conditions of Survival* (1961) 49 Cal. L.Rev. 431, 461; *Estate of Ferry, supra,* 55 Cal.2d 776, 783-785.)

[13]*Estate of Easter, supra,* 24 Cal.2d 191, 195; and see page 197 (Traynor, J. dissenting); *Estate of Haney* (1959) 174 Cal.App.2d 1, 8-11 [344 P.2d 16]; *Estate of Newman* (1956) 146 Cal.App.2d 780, 781 [304 P.2d 748]; *Estate of Welch* (1948) 83 Cal.App.2d 391, 397-398 [188 P.2d 797].

of survivorship thus eliminating the necessity of a detailed construction of the words.

The lack of a substitutional gift in the event of Anna's predeceasing John is said by respondent to indicate that the probate court intended no condition of survival. We agree that in certain circumstances the absence of a gift over may be evidence of an intent that the devise vest immediately in the devisee without imposition of the requirement of survival to a future time. However, that rule of construction generally is applied only in those cases where the question is whether a condition of survival should be *implied.* (See *Estate of Yates* (1915) 170 Cal. 254, 256 [149 P. 555]; *Estate of Welch, supra,* 83 Cal.App.2d 391, 396-397; *Estate of Riemer* (1945) 69 Cal.App.2d 634, 637 [159 P.2d 677].) In the instant case the decree of distribution contains an *express* condition of survival thus making the absence of a gift over of no constructional significance.

Respondent asserts nevertheless that the testator's intent is of paramount importance and that when the decree is incomplete in some respect, reference to the will should be allowed so as to ascertain such intent. The rule of finality of decrees, she argues, is a rule of necessity to be applied only when the decree and the will are in irreconcilable conflict but not when the decree merely fails to make a complete disposition of the estate. In an obvious tactic to resort to the will respondent contends that an incomplete decree is an ambiguous one.

Contrary to respondent's claim, incompleteness is not ambiguity. We said in *Estate of Barnes* (1965) 63 Cal.2d 580 [47 Cal.Rptr. 480, 407 P.2d 656] with respect to a will: "To say that because a will does not dispose of all of testator's property it is ambiguous and must be construed so as to prevent intestacy, either total or partial, is to use a rule of construction as the reason for construction. But a will is never open to construction merely because it does not dispose of all of the . . . property." (*Estate of Barnes, supra,* 63 Cal.2d 580, 583.) This reasoning is equally applicable to an incomplete decree of distribution. The decree here involved is clear in its disposition of the remainder although it does not provide for a disposition which encompasses all contingencies. Incompleteness alone will not allow resort to the will; without more the decree is not ambiguous.

As we have already explained, a decree of distribution is the judicial construction of the decedent's will. If the decree erroneously construes the will, it must be attacked on appeal. Where no appeal is taken the decree stands as the final and

conclusive interpretation of the testator's intent and is binding on all interested parties. Resort may not be had to the will thereafter unless the provisions of the decree are ambiguous. Where, as in the instant case, the decree was not challenged on appeal and is not ambiguous, we must insist that it remain unassailable against any attempt to attack it collaterally. In this way, we preserve the finality and conclusiveness of such decrees and guaranty the integrity and stability of titles to property.

Respondent finally asserts that the probate court in making the decree of distribution did not intend to require that Anna survive in order to take the remainder because the order fixing inheritance tax shows Anna as the sole owner of the remainder and the court's minute order does not mention a condition of survival.[14] Neither of these orders has significance in the determination of the devolution of the remainder. "The order fixing inheritance taxes, which may incidentally determine questions in regard to succession and beneficial ownership, is not binding except for tax purposes as between those who claim the estate, whether as heirs, legatees, or beneficiaries of a trust extrinsic to the will." (*Estate of Rath* (1937) 10 Cal.2d 399, 406 [75 P.2d 509, 115 A.L.R. 836]; accord: *O'Farrell* v. *American Trust Co.* (1957) 149 Cal.App. 2d 691, 695 [309 P.2d 60].) The minute order merely ordered the entry of the decree of distribution and was not the decree itself. (*Estate of Olsen* (1935) 9 Cal.App.2d 374, 382-383 [50 P.2d 70].) "An order for a judgment is not a judgment" (*United Taxpayers Co.* v. *San Francisco* (1921) 55 Cal.App. 239, 243 [203 P. 120]) and as such is of no force in the construction of the decree of distribution. (See *Estate of Spreckels* (1913) 165 Cal. 597, 606 [133 P. 289].)

We conclude that the court below erred in distributing upon John's death the balance of the trust estate to Anna's representative. Since the 1936 decree provided for distribution of the trust estate to Anna only if she survived John and made no provision for distribution of the trust estate if Anna predeceased John, it is clear that as to the balance of the trust estate E. W. Callnon must be deemed to have died intestate. Since John was the sole heir of the decedent such intestate property which was the separate property of decedent (see fn. 5, *ante*) passed to John under the laws of succession (§ 222; see *Estate of Wilson* (1920) 184 Cal. 63, 67

---

[14]The minute order provides in full: "SWEAR: C. O. BUSICK—ORDER SETTLE FINAL ACCOUNT AND DECREE OF DISTRIBUTION."

[193 P. 581]; *Estate of Watts* (1918) 179 Cal. 20, 22 [175 P. 415]; *Estate of McKenzie* (1966) 246 Cal.App.2d 740, 744 [54 Cal.Rptr. 888]). Although the record before us discloses that John survived his father but is now deceased, it gives no indication as to what, if any, proceedings have been had upon the administration of his estate. Accordingly the balance of the trust estate to which we hold John is entitled should be distributed to the representative of his estate or to his estate (§ 1023) or to his successor or successors in interest determined in any proceedings had upon his estate, as the case may be. (See *Scott* v. *Powell* (D.C. Cir. 1950) 182 F.2d 75, 83-84 [86 App.D.C. 277]; 5 Scott on Trusts (3d ed. 1967) § 430.1, pp. 3286-3287.) Such distribution is for the determination of the court below.

The judgment is reversed as to that portion thereof appealed from and the cause is remanded with directions to the trial court to enter judgment in favor of appellant in accordance with the views expressed herein. Appellant shall recover costs on appeal.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.