Filed 8/26/15  Bond v. Boshell CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SCOT W. BOND,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>MARGARET TWYMAN WARD BOSHELL et al.,<br><br>　　　Defendants and Respondents. | B258102<br><br>(Los Angeles County<br>Super. Ct. No. BP150272) |

APPEAL from an order of the Superior Court of Los Angeles County, David S. Cunningham III, Judge.  Affirmed.

Law Offices of Michele A. Dobson, Michele A. Dobson for Plaintiff and Appellant.

Sacks, Glazier, Franklin & Lodise, Robert N. Sacks, Matthew W. McMurtrey, Katherine G. McKeon for Defendants and Respondents.

_____

Scot W. Bond, an adoptee, objected to a trustee's recommendation that he be excluded from receiving a share of the remainder of a testamentary trust. He appeals an order of dismissal after the trial court sustained the trust remaindermen's demurrer to his objection without leave to amend. We affirm.

## BACKGROUND

In 1983, Bertyce Ward Dahl created a will bequeathing her property to several individuals and a charity outright. Article six of the will directed that the residue of Dahl's estate be held in trust for the benefit of seven relatives, including her nephews William T. and John P. Ward, and provided that the trust would terminate upon the death of the last surviving beneficiary, with the remainder of the trust estate going to the "lawful issue" of William and John. Articles seven through 13 set forth standard generalized language concerning such matters as choice of law, will contests, taxes, interest, and the severability of any unenforceable provision.

Article 13 stated: "The words 'lawful issue' as used in this Will shall not include adopted persons nor the issue of adopted persons."

Dahl passed away on July 9, 1988, and her will was submitted for probate in the Ventura County Superior Court. On February 29, 1989, in what we will call the "February order," the court created the Bertyce Ward Dahl Testamentary Trust by directing that $50,000 be distributed to the trustees and authorizing them to manage and distribute that amount. The February order incorporated article six of Dahl's will by quotation. As pertinent here, the order stated that when the trust terminated, "the entire remainder of the trust estate shall thereupon go and be distributed as follows: [¶] . . . [¶] b. One-half thereof upon the principle of representation to the lawful issue of JOHN PIERCE WARD living at the date of the termination of this trust; provided, however, in the event there shall be no lawful issue of JOHN PIERCE WARD living at the date of the termination of this trust, said one-half referred to in this subparagraph b shall go to augment the distributions pursuant to subparagraph a of this Section 2." The other one-half of the remainder was ordered to be distributed to the lawful issue of William T. Ward.

2

The February order failed to incorporate article 13 of the Dahl will or otherwise define the term "lawful issue."

On July 24, 1989, in what we call the "July order," the court on its own motion issued an order correcting the February order nunc pro tunc so as to include the same definition of the phrase lawful issue as was set forth in article 13 of Dahl's will: "'For purposes of this trust, the words "lawful issue" shall not include adopted persons nor the issue of adopted persons.'"

The last surviving beneficiary of the Dahl trust passed away in March 2014, after which the trustee, Wells Fargo Bank, filed a petition in the Los Angeles Superior Court requesting that the court identify the remaindermen, i.e., the lawful issue of William T. and John P. Ward. The natural children of William T. Ward were Margaret Boshell and Ann Kuhn, real parties in interest here. John P. Ward had no children of his own but had adopted Bond and Robert Ward, the sons of his spouse, when they were young adults. Wells Fargo recommended that only Boshell and Kuhn receive the trust's remainder because Bond and Ward[1] were adoptees, and were excluded as lawful issue as set forth in Dahl's will and the (corrected) February order.

On May 2014, Bond filed an objection to the trustee's petition, arguing an ambiguity existed between articles six and 13 of Dahl's will. Bond contended that because article six stated John P. Ward's issue would receive half of the trust estate's remainder, and Dahl knew when she signed the will that John P. Ward had only adopted children, her clear intent was to include adopted children as remaindermen. He also argued article 13, which defined lawful issue to exclude adopted children, was a standard, boilerplate clause that did not fit Dahl's family situation or reflect her intent. Finally, Bond argued the July order was improper because it was made without notice.

Margaret Boshell and Ann Kuhn demurred to the objection, arguing Dahl intended to exclude adopted children under the will. The court agreed, and sustained the demurrer without leave to amend.

---

[1] Ward predeceased the termination of the trust.

3

Bond timely appealed.

## DISCUSSION

On appeal, Bond, abandons his original arguments, now arguing only that the Ventura County probate court had no authority in July 1989 to modify the February order.

### A. Interpretation of the February order

"'The administration of a decedent's estate involves a series of separate proceedings, each of which is intended to be final . . . .' [Citations.] A decree of distribution is a judicial construction of the will arrived at by the court ascertaining the intent of the testator. [Citations.] Once final, the decree supersedes the will [citations] and becomes the conclusive determination of the validity, meaning and effect of the will, the trusts created therein and the rights of all parties thereunder." (*Estate of Callnon* (1969) 70 Cal.2d 150, 156, fn. omitted.)

If the terms of a will are unambiguous and are susceptible to only one meaning, the intent of the testator is determined from the face of the instrument itself. (*Estate of Pierce* (1948) 32 Cal.2d 265, 273.) The paramount rule in the construction of wills, to which all other rules must yield, is that a will must be construed according to the intention of the testator as expressed therein, and this intention must be given effect. (*Ibid.*) The words "lawful issue" in a will are construed so as to include adopted children unless a testator uses language clearly communicating a contrary intent. (*Estate of Huntington* (1976) 58 Cal.App.3d 197, 207.) Whether an adopted child is included within the meaning of "lawful issue" depends on the particular circumstances of each case, and is determined from the general scheme or purpose of the will considered as a whole. (*Estate of Pierce*, *supra*, 32 Cal.2d at p. 271.)

If a testator directs that property be held in trust for the benefit of legatees, a testamentary trust may be created by the probate court by a decree transferring the property to a trustee. (Prob. Code, § 15200, subd. (c).) Such a trust, like all trusts, will terminate when its term expires, and upon termination the trustee will continue to enjoy the powers reasonably necessary under the circumstances to wind up the trust's affairs.

4

(Prob. Code, § 15407.)  At the expiration of a testamentary trust, the trustee, the trustor's personal representative, or any other interested person may petition the court for an order for final distribution of a decedent's estate.  (Prob. Code, § 11600.)

During these proceedings, any interested person may file a written statement of interest in the estate in support of or in opposition to the petition.  (Prob. Code, § 11702.) A will may be contested by objection to a petition for final distribution.  (Prob. Code, § 8250.)  Such an objection is in the nature of a pleading, to which the petitioner or any other interested person may respond by answer or demurrer.  "Demurrer may be made on any of the grounds of demurrer available in a civil action.  If the demurrer is sustained, the court may allow the contestant a reasonable time, not exceeding 15 days, within which to amend the objection.  If the demurrer is overruled, the petitioner and other interested persons may, within 15 days thereafter, answer the objection."  (Prob. Code, § 8251, subd. (b).)  One ground for demurrer is that the objection fails as a matter of law to raise a cognizable challenge to the proposed final distribution.

In ruling on the demurrer to the objection, the trial court must consult the testamentary instrument at issue, be it the testator's will or a prior decree of distribution. However, where a decree of distribution is contrary to the provisions in a will, the decree controls and prevails over the terms of the will.  (*Meyer v. Meyer* (2008) 162 Cal.App.4th 983, 992.)  Only if the language of the decree is "uncertain, vague, or ambiguous" may courts consult the will, and even then only to establish the true meaning and intent of the decree, not to contradict it.  (*Estate of Callnon*, *supra*, 70 Cal.2d at p. 157; *Estate of Goldberg* (1938) 10 Cal.2d 709, 713.)  If the distributive portions of the decree are unambiguous, the will may not be consulted in order to create an ambiguity.  (*Estate of Callnon*, *supra*, 70 Cal.2d at p. 157.)

A court reviewing a judgment of dismissal after the trial court has sustained a demurrer without leave to amend applies two separate standards of review.  (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672; *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1049.)  First, the court reviews the objection de novo to determine whether it states a cause of action, and in doing so accepts as true material factual allegations together with

5

properly judicially noticed facts. (*Beckwith v. Dahl*, *supra*, 205 Cal.App.4th at p. 1049.) An appellate court will reverse only if the alleged facts show the claimant is entitled to relief under any possible theory. (*Ibid.*) Second, the reviewing court will apply the abuse of discretion standard to determine whether the trial court's refusal to grant leave to amend was proper. (*Ibid.*) Under this standard, reversal is proper only if there is a reasonable possibility the pleading can be cured by amendment. (*Ibid.*)

In considering a demurrer, the court gives the pleading a reasonable interpretation, reading it as a whole and its parts in their context. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) A pleading otherwise good on its face is subject to demurrer when judicially noticed facts render it defective. (*Ibid.*) A court may take judicial notice of its own records or those of another court, and of matters that are capable of immediate and accurate determination and are not reasonably subject to dispute. (Evid. Code, § 452, subds. (d), (h).)

Here, the February order unambiguously provided that the phrase "lawful issue" did "not include adopted persons nor the issue of adopted persons." Bond, as an adoptee, therefore failed to qualify as a remainderman, and his objection to a final distribution that would exclude him was meritless as a matter of law.

Bond does not dispute this reasoning, but instead argues the Ventura County trial court had no authority in July 1989 to correct its February order. We disagree.

**B.     A trial court enjoys limited authority to correct its own orders**

Generally, after a decree of distribution of an estate becomes final it may no longer be subjected to change or modification with respect to the measure of the rights of persons interested in the estate. (*Estate of Goldberg*, *supra*, 10 Cal.2d at p. 713.) However, when it appears a clerical error has been committed and carried into the judgment or decree, the court may correct the error. (*Id.* at p. 714.) Courts have the inherent power to make retroactive entries to correct clerical errors in court records to make them reflect the true facts. (*Wexler v. Goldstein* (1956) 146 Cal.App.2d 410, 412; *In re Candelario* (1970) 3 Cal.3d 702, 705.)

6

The power to amend extends "to cases where some provision of or omission from an order or judgment as made or rendered was due to the inadvertence or mistake of the court and may therefore properly be treated as a clerical misprision rather than a judicial error." (*Estate of Goldberg*, *supra*, 10 Cal.2d at pp. 715-716.)  When "it so clearly appears that the judgment as entered is not the sentence which the law ought to have pronounced upon the facts as established by the record, that the court acts upon the presumption that the error is a clerical misprision rather than a judicial blunder, and sets the judgment, or rather the judgment entry, right by an amendment *nunc pro tunc*." (*Id.* at p. 716.)

However, "it is not proper to amend an order nunc pro tunc to correct judicial inadvertence, omission, oversight or error, or to show what the court might or should have done as distinguished from what it actually did. . . .  It may not be used as a vehicle to review an order for legal or judicial error by 'correcting' the order in order to enter a new one." (*Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 891.)  "The distinction between clerical error and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered.' [Citation.]  Any attempt by a court, under the guise of correcting clerical error, to 'revise its deliberately exercised judicial discretion' is not permitted." (*In re Candelario*, *supra*, 3 Cal.3d at p. 705; *Estate of Eckstrom* (1960) 54 Cal.2d 540, 545 ["clerical errors do not include those made by the court because of its failure to correctly interpret the law or apply the facts"].)

In *Hamilton v. Laine*, a child suffered severe and permanent brain damage after a swimming pool accident. (*Hamilton v. Laine*, *supra*, 57 Cal.App.4th at p. 887.)  In 1985, the trial court entered an order approving a compromise of the minor's claim against the pool's owners, pursuant to which a lump-sum payment was ordered placed into a medical trust fund. (*Ibid.*)  Ten years later, the minor, through his guardian ad litem, requested that the medical trust be restructured as a special needs trust, and further requested that the restructuring be made retroactive so as to avoid a Medi-Cal lien that had arisen in the meantime.  The trial court granted the relief prayed for by entering an order that established a special needs trust that related back nunc pro tunc to 1985. (*Id*. at p. 889.)

On appeal, the appellate court held the nunc pro tunc order exceeded the trial court's authority because it was made not to correct a clerical error but "to redress . . . a judicial omission." (*Id.* at p. 892.)

Here, the Ventura County probate court, presumably intending to effect Dahl's wishes, quoted the language of her will extensively to create the Bertyce Ward Dahl Testamentary Trust in February 1989. Although the court incorporated as part of its order Dahl's directions regarding distribution of the remainder of her trust estate to the lawful issue of her nephews, it failed to effect the exception she had made to those directions. This was clearly a ministerial rather than a judicial error, as the court followed the will in all other pertinent respects. Unlike in *Hamilton*, where the court's professed intent was to change its original order nunc pro tunc, here, nothing in the record suggests the Ventura County court intended to ignore some of Dahl's wishes while effecting others.

Bond contends the July order was improper because it "completely changed the legal effect" of the February order. But whether the July correction changed the legal effect of the February order is irrelevant. (Most corrections change the things corrected.) The question is whether the omission in the February order was deliberate or inadvertent. As discussed, the Ventura County probate court always intended to follow Dahl's instructions in order to effect her wishes, one of which was to exclude adoptees as remaindermen. That the court initially failed to follow one instruction out of many was clearly a ministerial oversight. The court acted within its authority to correct the error nunc pro tunc.

## DISPOSITION

The judgment is affirmed.  Each party is to bear its own costs.

NOT TO BE PUBLISHED.


                                                    CHANEY, J.

We concur:



        ROTHSCHILD, P. J.



        MOOR, J.[*]

_____

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.