Filed 8/10/21  Pfanner v. Moorhouse CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DENNIS R. PFANNER, as Trustee, etc., | C087631 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201700211467PRTRFRC) |
| v. | |
| JENNIFER MOORHOUSE, as Trustee, etc., | |
| Defendant and Respondent. | |

Plaintiff Dennis R. Pfanner was a beneficiary of a trust created by his father.  He was a beneficiary individually and as trustee of a trust for the benefit of his sister, Debora J. Pfanner-House.  The trial court found that Dennis, both individually and as trustee, contractually released his interests in a trust asset in favor of Debora.  Dennis contends that the trial court as a matter of law misinterpreted the release agreement and that he released only his individual interest in the asset.

1

Debora is deceased, and defendant Jennifer Moorhouse, as trustee of Debora's trust, contends that we should affirm the trial court's decision. She also argues, as an alternate basis for affirming, that Debora was entitled to, or had a vested interest in, the trust asset following her death despite her predeceasing a survival clause contained in the trust document.

We reverse the judgment.

### FACTS AND HISTORY OF THE PROCEEDINGS

Oscar Pfanner, Jr., and his wife, Margaret Pfanner, executed a Community Property Trust Agreement and Declaration of Trust in 1983. They transferred four primary assets to the trust: a family residence in Sacramento, a house and ranch property on Cruzon Grade Road in Nevada City (the "Nevada City" or "Cruzon Grade" house or property), a 9.5 percent interest in a partnership, and farm equipment. They named themselves as co-trustees. Two of Oscar and Margaret's children, plaintiff Dennis R. Pfanner and his sister Debora J. Pfanner-House, were beneficiaries.

Upon the death of the first trustor, the Community Property Trust would be divided into two sub-trusts: The Decedent's Trust and the Survivor's Trust. The first deceased trustor's interest in the Community Property Trust would be apportioned to the Decedent's Trust, and the surviving trustor's interest would be apportioned to the Survivor's Trust.

The Decedent's Trust would be further divided into two additional sub-trusts: The Marital Trust and the Bypass Trust. A portion of the Decedent's Trust would be allocated to the Marital Trust in an amount sufficient to eliminate or reduce estate taxes. The remainder of the Decedent's Trust would be allocated to the Bypass Trust for the surviving trustor's benefit. After the first trustor's death, the Marital and Bypass Trusts became irrevocable.

2

Margaret died in September 1983. Afterward, Oscar allocated various trust assets to the Bypass Trust, but did not allocate any assets to the Marital Trust.

In 1999, Oscar gave Dennis and Debora each an 11.6 percent outright interest in the Nevada City property. The Community Property Trust retained a 76.8 percent interest in the property.

In 2002, Oscar executed a third amendment to the Community Property Trust. This amendment named Debora as the first successor trustee, and Dennis as second, of all of the trusts created under the declaration. It also named the two siblings as contingent remainder beneficiaries of the Survivor's Trust.

Oscar also executed a will. He directed that all remaining assets in the Bypass Trust upon his death would be divided equally between Dennis and Debora free of trust.

Oscar executed a fourth amendment to the Community Property Trust on December 21, 2005. This amended the Survivor's Trust. The Survivor's Trust would still be divided in two equal shares between Dennis and Debora. Dennis would take his share free of trust. However, the share allocated to Debora would be held in trust with Dennis acting as trustee (the support trust). As trustee, Dennis had the authority to pay to Debora "as much of the trust income or principal or both (up to the whole thereof) as the Trustee, in the Trustee's sole and absolute discretion, deems necessary or desirable for her support, health, education and maintenance . . . ." When Debora reached 80 years of age, the undistributed balance of the support trust would be distributed to her unless Dennis deemed it necessary or appropriate to withhold all or any part of the distribution. If Debora died without leaving surviving issue, the undistributed balance would be distributed to Dennis or his issue.

Oscar died five days after executing the fourth amendment. Debora assumed her role as successor trustee of the Community Property Trust. Dennis served as personal representative in the probate action over the will.

In 2006, Debora petitioned the Nevada County Superior Court to ascertain beneficiaries and determine property allocation. The trial court found that Oscar had not allocated assets to the Marital Trust as required by the Community Property Trust declaration but had retained them in the Survivor's Trust. The court declared that 37.318 percent of the Survivor's Trust assets were to be allocated to the Marital Trust. Dennis and Debora were to receive 50 percent each of these assets free of trust. The court ordered that the remaining assets of the Survivor's Trust (62.682 percent of the total assets) were to be distributed in accordance with the fourth amendment: 50 percent to Dennis free of trust and 50 percent to Dennis as trustee of the support trust for Debora.

By 2007, the probate of Oscar's estate had not closed and none of the assets held in the trusts had been distributed. That year, Dennis and Debora entered into an agreement to allow Dennis to receive "his distribution of the trust estate as soon as possible." We will describe the distribution agreement in more detail below, but in short, the parties agreed that at the conclusion of the probate estate, the Sacramento house would be distributed to Dennis "as an individual." The partnership interest would also be distributed to Dennis. An additional statement in the agreement forms the crux of this case: "Dennis R. Pfanner, as an individual, hereby releases any interest in the remaining assets of the Trust[.]" Debora signed the agreement as trustee of the Community Property Trust and as a beneficiary of that trust. Dennis signed the agreement as a beneficiary of the Community Property Trust and also as trustee of the support trust.

Dennis contends that at no time after the parties executed the 2007 distribution agreement did Debora transfer the Community Property Trust's interest in the Nevada City property as required by the fourth amendment, the Nevada County Superior Court's order, and the distribution agreement. Nonetheless, in December 2016, Debora executed two grant deeds that purported to transfer her interest in the Nevada City property to the trustees of her revocable trust, who were herself and defendant Jennifer Moorhouse.

4

Debora died on March 1, 2017, at the age of 62 years. Upon her death, Dennis assumed the role of successor trustee of the Community Property Trust in accordance with the third amendment.

On April 25, 2017, Dennis petitioned the Sacramento County Superior Court to ascertain beneficiaries and for the distribution of the Nevada City property. That property was the sole remaining asset of the Community Property Trust. Dennis asked the court to:

(a) Declare that the Community Property Trust holds a 76.8 percent interest in the Nevada City property, 37.318 percent of which is held in the Marital Trust and 62.682 percent of which is held in the Survivor's Trust; and

(b) Order Dennis as trustee of the Community Property Trust to distribute that trust's interest in the Nevada City property as follows:

(1) The Marital Trust's interest be distributed one-half to Dennis and one-half to Moorhouse as trustee of Debora's trust.

(2) The Survivor's Trust's interest be distributed to Dennis.

The trial court denied Dennis's petition. It ruled that the 2007 distribution agreement controlled, and that the agreement "clearly and unambiguously provided" that Dennis "released his interest, any interest he claims as a trustee, and the interest of any contingent beneficiaries" in the Nevada City property. As a result, the parties transferred the Community Property Trust's interest in the Nevada City property (the interests of both the Marital Trust and the Survivor's Trust) to Debora. The court interpreted the agreement without reference to extrinsic evidence.

## DISCUSSION

Dennis contends the trial court erred. He claims that under the unambiguous terms of the distribution agreement, he did not release his interest in the Nevada City property as trustee of the support trust established for Debora.

5

I

*Standard of Review*

Our interpretation and construction of a written instrument is de novo where, as here, the trial court's interpretation of the instrument was based solely upon the instrument's terms without the aid of extrinsic evidence. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865.)

Dennis appeals on the judgment roll. On a judgment roll appeal, " '[t]he question of the sufficiency of the evidence to support the findings is not open. Unless reversible error appears on the face of the record, an appellate court is confined to a determination as to whether the complaint states a cause of action, whether the findings are within the issues, and whether the judgment is supported by the findings.' [Citations.]" (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082-1083.) As the latter matters are not raised, this appeal is confined to determining whether reversible error appears on the face of the record.

II

*Construction of the 2007 Distribution Agreement*

Our rules of contractual interpretation are familiar. We interpret the distribution agreement so "as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) The parties' mutual intent must be interpreted solely from the writing if possible. (Civ. Code, § 1639.) Dennis and Debora agree that the agreement is not ambiguous, and the correct interpretation is apparent on the agreement's face.

We interpret the agreement's words "in their ordinary and popular sense[.]" (Civ. Code, § 1644.) "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." (Civ. Code, § 1648.)

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641.) "[W]here there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Code Civ. Proc., § 1858.)

Our interpretation of the agreement must "make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643.) "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." (Rest.2d, Contracts, § 203(a).)

Applying the rules of interpretation here, we conclude the trial court's interpretation of the distribution agreement was in error. The agreement unambiguously distinguishes between Dennis in his individual capacity as a beneficiary of the Community Property Trust and as trustee of the support trust created for Debora. He released only his individual beneficial interest in the Nevada City property, not his interest as trustee of the support trust.

When the agreement addresses the parties, it does so in the specific capacities in which they are to act or will be affected. The agreement was made between Dennis and Debora in their different capacities. Debora made the agreement as trustee of the Community Property Trust and as an individual beneficiary of that trust. Dennis made the agreement as an individual beneficiary of the Community Property Trust and as trustee of the support trust.

The agreement distinguished between Dennis acting as an individual and as a trustee. At the time of the agreement, the Community Property Trust held the following assets: the Sacramento residence (which was still in probate), a 9.5 percent interest in a general partnership, a 76.8 percent interest in the Nevada City property, and cash. The agreement stated that combining the parties' interests in the Marital Trust and the

7

Survivor's Trust, "Dennis R. Pfanner" held a 50 percent interest in the trust assets, "Deborah J. Pfanner-House" an 18.659 percent interest, and "Dennis R. Pfanner, Trustee" of the support trust a 31.341 percent interest.

The agreement's purpose was to distribute Dennis's individual share of the Community Property Trust's assets to him. It stated, "Dennis R. Pfanner desires to receive his distribution of the trust estate as soon as possible. By this Agreement, the parties desire to identify the assets identified above to be distributed to Dennis R. Pfanner individually and provide for the distribution of such assets as soon as possible." By referring to the share of assets Dennis would receive "individually," the agreement made a distinction between Dennis's individual interest in the assets and his interest in the assets as a trustee. The agreement continued this distinction throughout.

The parties agreed that two of the trust's assets would be given to Dennis in his individual capacity. They agreed that the Sacramento residence would be distributed to Dennis "as an individual." Debora, as trustee of the trust, was required to execute all documents necessary to effectuate the transfer to "Dennis R. Pfanner," including documents necessary to allow the distribution of the residence from the probate estate "directly to Dennis R. Pfanner." "Dennis R. Pfanner" agreed to pay all costs associated with the probate estate and the Sacramento property.

The parties also agreed that the partnership interest would be distributed to "Dennis R. Pfanner." Debora agreed that as trustee of the trust, she would assign the partnership interest to "Dennis R. Pfanner."

Dennis then released his interest in the trust's remaining assets. Due to the agreement's consistent distinction between Dennis operating in his individual capacity and in his capacity as a trustee, the meaning of Dennis's release of his interest in the remaining assets is clear. The release states, "Dennis R. Pfanner, as an individual, hereby releases any interest in the remaining assets of the [Community Property] Trust identified in [the distribution agreement]." The remaining assets were the trust's interest in the

8

Nevada City property and some cash. Dennis released only his individual interest in the Nevada City property, not any interest he held as trustee of the support trust.

The trial court relied on Dennis's authority as trustee of the support trust to distribute her share of that trust at any time to Debora as the basis for concluding Dennis had also released his interest as trustee in the Nevada City property. We agree with the trial court that given the fourth amendment's "grant of 'absolute and binding' discretion, Dennis had the authority to release his interest, his interest as trustee and the interest of any contingent beneficiaries in the Nevada [City property]."

However, having the authority to release his interest as trustee is one thing; actually releasing that interest is another. Nothing in the distribution agreement states that Dennis actually released his interest as trustee of the support trust in the Nevada City property. Under the structure of the agreement, had Dennis done so, the agreement would have stated he released his interest as Dennis R. Pfanner as an individual and as trustee of the support trust. The agreement said nothing even similar to this.

Moorhouse claims that by "seiz[ing]" on the words "as an individual," Dennis has violated a rule of contractual interpretation that prohibits us from interpreting a contract " 'by isolating any single clause or group of clauses . . . .' " (*Iqbal v. Ziadeh* (2017) 10 Cal.App.5th 1, 10, quoting *Transportation Guarantee Co. v. Jellins* (1946) 29 Cal.2d 242, 247.) Moorhouse misuses that rule in this instance.

" ' "[A] contract is to be construed as a whole, 'so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' " (*McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 970, quoting Civ. Code, § 1641; see *Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1027, 1029; *Lemm v. Stillwater Land & Cattle Co.* (1933) 217 Cal. 474, 480 ["Although the language of the contract must govern its interpretation (Civ. Code, [§§] 1638, 1639), nevertheless the meaning is to be obtained from the entire contract, and not from any one or more isolated

9

portions thereof."].)'  (*Epic Communications, Inc. v. Richwave Technology, Inc.* (2015) 237 Cal.App.4th 1342, 1349.)"  (*Iqbal v. Ziadeh, supra*, 10 Cal.App.5th at pp. 10-11.)

Our interpretation gives effect to the entire agreement.  Our interpretation of "as an individual" in the release clause relies on how the parties used that term throughout the agreement and on the agreement's practice of distinguishing whether the parties were acting in their capacities as trustees or as individuals.  We have given each use of the phrase a consistent meaning.

Moorhouse contends we should focus instead on the word "any" in the phrase "Dennis R. Pfanner, as an individual, hereby releases any interest in the remaining assets . . . ."  Moorhouse asserts that "any" interest would include Dennis's interest as a trustee.  This interpretation, however, would violate the very rule Moorhouse accuses Dennis of violating.  It isolates a single word as the basis for interpreting the agreement, and it ignores the clause that modifies it as well as the use of that clause throughout the agreement.

Moorhouse asserts that by signing the agreement in his individual capacity as well as his capacity as trustee of the support trust, Dennis "gave his imprimatur as trustee to the entire agreement, including the release of any interest in the Nevada City house to Debora."  Not so.  Dennis gave his "imprimatur" to the agreement as it was expressly written.  His signatures in both capacities did not reform the agreement's express limitation that Dennis released only his individual interest in the property.

Moorhouse's reliance on *JPMorgan Chase Bank, N.A. v. Ward* (2019) 33 Cal.App.5th 678, 685, does not establish her point.  In that case, the court of appeal held that a lender could bring a cause of action to restore a lost deed of trust where the encumbered property was owned by a trustee of a trust who was also the trust's sole beneficiary and who did not indicate on the deed whether he signed it as a trustee.  "[A] signature by the sole trustee and beneficiary of an inter vivos revocable trust is sufficient

10

to convey good title to trust property" where the trustee signs without referencing his representative status. (*Ibid*.)

Unlike in that case, here there is no question of Dennis's and Debora's interests. Dennis signed the agreement indicating both of his capacities, but the agreement expressly limited the release to his individual interest. There was no uncertainty to cure to allow the agreement to be implemented or enforced in accordance with the parties' mutual intent.

The parties in the alternative raise arguments based on extrinsic evidence. The trial court did not rely on extrinsic evidence, and neither do we. Because the distribution agreement's terms are not ambiguous and the parties agree that the agreement's correct interpretation is apparent on its face, we do not address these additional arguments. The clear language of the agreement indicates Dennis released only his individual interest in the Nevada City property, not his interest as trustee of Debora's support trust. The trial court erred in concluding otherwise.

III

*Vesting of Debora's Interest*

Moorhouse seeks to affirm the trial court's judgment on a different ground. She asserts that under the terms of the fourth amendment, because Debora was "entitled" to distributions from the support trust during her lifetime, she was not a contingent beneficiary and her estate had a vested interest in any assets that remained in the support trust after her death even though she did not live to the age of 80.

The fourth amendment allocated the assets of the Survivor's Trust into two equal shares for Dennis and Debora. Dennis would take his share free of trust. However, Dennis would hold Debora's share in the support trust for Debora's benefit. Dennis in his sole discretion could make payments to Debora from time to time for her support up to the entire amount held in the support trust. When Debora reached 80 years of age, the

11

fourth amendment required Dennis to distribute the undistributed balance of the support trust to her unless in his discretion he deemed it necessary or appropriate not to distribute it.

The fourth amendment addressed Debora's interest in the support trust upon her death as follows:

"(3)  If DEBORA should predecease Trustor [Oscar] or die *before becoming entitled to receive distribution* of this Trust, the undistributed balance of this Trust shall thereupon be distributed to the then living issue of DEBORA as determined by right of representation.

"(4)  If DEBORA should die without leaving surviving issue, the undistributed balance of this Trust shall be distributed to DENNIS, or to the issue of DENNIS by right of representation."  (Italics added.)  Debora had no living issue.

Moorhouse claims that Debora became "entitled" or vested to receive distributions from the support trust when Oscar died because the fourth amendment required Dennis at that time to make distributions to her for her support.  Under this reading, the argument goes, because Debora was entitled to receive distributions of the support trust before she died, the requirement to distribute the support trust's remaining assets to Dennis if Debora died before reaching the age of 80 was not triggered.

Neither the law nor the terms of the fourth amendment support Moorhouse's argument.

The support trust was a discretionary support trust.  A discretionary support trust is one "in which the trust's purpose is to provide for a beneficiary's needs but the trustee has discretion in determining those needs."  (*Young v. McCoy* (2007) 147 Cal.App.4th 1078, 1087.)

Here, Dennis had "sole and absolute" discretion to determine whether Debora needed payments from the support trust.  Within that discretion, Dennis was authorized not to make any support payments when considering any absence of need by Debora and

12

the earnings, independent resources, and other means of support available to her. No doubt the support trust was intended to protect its assets from Debora's creditors.

In a discretionary support trust where the trustee has absolute discretion in paying trust income and principal, the beneficiary does not have an entitlement or vested interest in the trust assets. Rather, the beneficiary "has at most a mere expectancy. (Bogert, Trusts, § 226.) Consequently, neither the beneficiaries nor their creditors can directly compel any allocation . . . ." (*Estate of Canfield* (1947) 80 Cal.App.2d 443, 451-452.) Because Debora could not compel Dennis to make distributions from the support trust while she was alive, the fourth amendment's reference to her "becoming entitled to distribution" does not convert her expectancy in support payments into a vested interest which supersedes the amendment's survival clause.

The case authorities on which Moorhouse relies to argue that Debora's interest in the support trust effectively vested when Oscar died are distinguishable. She cites *Estate of Taylor* (1967) 66 Cal.2d 855, as an example of a court holding that a trust beneficiary was entitled to distribution even though the beneficiary died before the actual distribution. There, the will stated the beneficiary would vest if she survived distribution. The beneficiary died approximately two weeks before the distribution hearing. The California Supreme Court affirmed the trial court's ruling that the beneficiary's interest vested at a time when distribution should have been made before she died. The executor had unreasonably delayed preparing the estate for distribution. (*Id*. at pp. 857-858.) Unlike in the case before us, the *Taylor* beneficiary became vested before she died according to the terms of the trust. The case does not stand for the proposition that an expectancy in a discretionary trust by itself constitutes a vested interest in the trust's ultimate distribution or that Debora's interest in distribution vested before she died.

Moorhouse cites *Estate of Newman* (1956) 146 Cal.App.2d 780 (*Newman*), to support her claim that Debora was not a contingent beneficiary. The *Newman* court held that a beneficiary's interest in a trust vested upon the allocation of the interest at the

13

trustor's death "even though enjoyment is postponed . . . ." (*Id*. at p. 784.) In that case, the trust gave B a life estate, and upon B's death the trust was to be terminated and the estate vested in and transferred to R, E, and P. R and E did not survive B. The court held that each remainder person's interest vested upon the death of the testatrix and creation of the trust and were not contingent on termination of the trust and the life tenant's death. (*Id*. at pp. 781-784.)

The California Supreme Court later explained that *Newman* does not apply where, as here, the beneficiary's interest is expressly contingent on survival. In *Estate of Callnon* (1969) 70 Cal.2d 150 (*Callnon*), the probate court's decree granted a life estate to the decedent's son to be held in trust by the decedent's sister. Upon the son's death, the trust estate would vest in the sister. The decree made no provision for the estate if the sister did not survive the son, which is what happened. (*Id*. at pp. 152-154.) The new trustee contended the son's interest was subject to intestate succession. The sister's representative argued the decree was ambiguous and extrinsic evidence in the form of the will showed that the sister's remainder interest was vested. (*Id*. at pp. 155-156.)

The Supreme Court agreed with the trustee. Whatever the meaning of the decree's language granting the remainder interest, the sister "was required by an express condition to survive the life beneficiary in order to take anything. Since she predeceased [the life beneficiary,] any interest she had in the remainder 'vanished into thin air.' (*Estate of Haney* [(1959)] 174 Cal.App.2d 1, 8.)" (*Callnon, supra*, 70 Cal.2d at p. 159.)

The sister's representative had relied on *Newman* and other authorities that involved the resolution of future interests to argue that vesting could have occurred despite the survival clause. (*Callnon, supra*, 70 Cal.2d at p. 159, fn. 13.) The Supreme Court disagreed: "The cases cited by respondent are easily distinguishable. The absence of an express condition of survival in those cases made it necessary for the courts to construe the specific language in order to determine if a condition of survivorship was contained by implication." (*Id*. at p. 159.)

Here, the fourth amendment expressly conditioned Debora's entitlement to distribution of the support trust on her reaching the age of 80. Indeed, because Dennis had discretion not to distribute the trust when Debora reached 80, it could be argued that Debora could never have a vested interest in the trust. We need not decide that issue, as Debora did not live to the age of 80, and thus her expectancy in the support trust never vested.

Moorhouse acknowledges that Dennis had discretion to make distributions to Debora, but she claims that courts "have routinely held that beneficiaries are entitled to distributions, even if the trustees have absolute discretion whether to make them." She cites *Estate of Miller* (1964) 230 Cal.App.2d 888, to support her claim, but that case is limited to its facts. A trustee given sole or absolute discretion may not exercise that discretion arbitrarily, in bad faith, or without regard to the trust's purposes. (*Id*. at pp. 909-911.) The court of appeal held that the trustee in that case abused his absolute discretion in bad faith by not making support distributions in conformance with the trustor's intent. (*Id*. at pp. 912-913.) The case did not concern the effect of a survival clause or whether the injured beneficiary had a vested right in a remainder.

Moorhouse implies that Dennis acted in bad faith by not distributing any support trust assets to Debora. This is a factual assertion which the trial court did not adjudicate, and we take no position on it. We note, however, that Moorhouse provides no authority for the proposition that a trustee's bad faith refusal to distribute a support trust's assets during the lifetime of the beneficiary renders a survival clause inoperative.

Moorhouse further claims that "Dennis's argument that Debora had no right to distribution of the trust when she died would mean that Dennis could refuse to distribute any of the trust for her benefit, no matter how great her need." That argument is without merit. The existence and the effect of the survival clause did not affect whatever duty Dennis may have had to distribute the support trust's assets to Debora for her support while she lived. As a result of the survival clause, however, whatever interest Debora

15

may have had in the support trust " 'vanished into thin air' " after her death.  (*Callnon, supra*, 70 Cal.2d at p. 159.)

DISPOSITION

The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Costs on appeal are awarded to appellant.  (Cal. Rules of Court, rule 8.278(a).)


_____

HULL, J.


We concur:


_____

RAYE, P. J.


_____

RENNER, J.